It is with some emotional sensibilities that I present to the clerk the last opinion I shall be privileged to write as a member of the time-honored Court of Chancery of New Jersey.
The present decision is inordinately verbose, but necessarily so in order to supply a basic understanding of a succession of events which originated in the year 1920.
It was then that the petitioner, George Kanzler, and Patrick J. Smith became associated as partners in the manufacture of asbestos products under the trade name of Smith Kanzler. The enterprise prospered and upon the death of Smith on August 25th, 1930, the business had achieved a net worth in excess of a quarter of a million dollars.
Smith was survived by his widow, Mary A. Smith, and by one child, Mary Patricia Smith, then nine years of age. He died testate nominating his wife as executrix and sole beneficiary of his estate. Of legal significance was the fact that his daughter was born after the execution of the testator's will. Notwithstanding the consequential invalidity of his will, the instrument was admitted to probate by the surrogate of Union County on September 5th, 1930, and his widow qualified as executrix. Assuming to act in the capacities of executrix and sole beneficiary, she took possession and dominion of the decedent's estate including his one-half partnership interest in the business.
On January 27th, 1931, the widow, individually and as executrix, and the petitioner as surviving partner, and their respective brothers as additional incorporators entered into an agreement pursuant to which a corporation entitled Smith and Kanzler, Inc., was organized as a corporate instrumentality by which to continue the business. The widow individually and as executrix joined in the transfer of all the assets of the former partnership. She, however, did not either individually or as natural guardian of her daughter prosecute any legal proceedings by which to convey and confirm unto the corporation the assets transferred to it, although in the agreement she agreed to do so. In such circumstances the corporation continued the operation of the business, but discord *Page 611 
regarding the management and policies of the business arose between the two factions, the petitioner on the one hand and the widow on the other.
On January 13th, 1936, the widow filed a bill of complaint in this court in a suit to which neither the petitioner nor the corporation were parties. On January 27th, 1936, a consent decree was entered adjudging, among other things, that the will so probated and the letters testamentary so issued were null and void. While this decree was modified on March 31st, 1936, by consent, the surrogate of Union County on March 16th, 1936, on petition of the widow made an order setting aside the probate of the will and the letters testamentary, and on the same day proceeded to appoint the widow as administratrix of Patrick Smith's estate and as general guardian of the person and property of their daughter, Mary Patricia Smith. The petitioner and the corporation were not made parties to any of those proceedings.
The petitioner, upon learning of the actions of the widow, demanded that the corporation of Smith and Kanzler, Inc., be forthwith liquidated according to law. At a meeting of the board of directors called for that purpose, the resolution was defeated as a result of a tie vote.
On February 19th, 1936, petitioner filed his bill of complaint in this cause against the widow, the infant daughter, the corporation and its stockholders, having for its object the re-transfer of the business and assets of the corporation to the complainant as surviving partner of the partnership to be by him liquidated according to law for the equal distribution of the proceeds between him and the estate of his deceased partner. The widow, individually and as administratrix, and her brother, individually and as guardian ad litem, filed answers in opposition to the relief sought. Additionally, a counter-claim was filed by the widow, as administratrix of the estate, seeking an accounting from the complainant, the corporation and herself, individually, for all assets in their possession belonging to the estate of her husband. Efforts to negotiate an amicable settlement of the controversial subjects were unsuccessful. *Page 612 
On October 2d 1936, Vice-Chancellor Buchanan filed his conclusions expressed in a letter addressed to counsel, stating that the court should endeavor to help complainant correct the equitable wrong suffered by the infant, but that it did not follow that the complainant was entitled to a re-conveyance of the assets to himself as surviving partner for liquidation, and further, that if the full equitable rights of the infant should be obtained by her through proper payment by her mother, individually or as administratrix, to her or her guardian, there would be no further liability on the part of the complainant. The Vice-Chancellor also suggested that the infant might file a counter-claim in said suit, and if that were done and if the infant's interests were fully taken care of by her mother, the complainant could then have the benefit of a decree establishing a lack of further liability on his part to the infant, but the Vice-Chancellor added that possibly such counter-claim would not be necessary in view of the fact that the administratrix had already counter-claimed for an accounting.
On November 17th, 1936, a counter-claim was filed in this cause in behalf of said infant by Thomas A. Faughnan, her guardian adlitem, and her mother, as general guardian, seeking an accounting by the complainant, the corporation, and the widow, of the infant's interests in the assets of the corporation as of the date of death of her father, or as of the date of said counter-claim, whichever value was higher, or at the highest intermediate value. The widow, individually and as administratrix, filed an answer admitting the allegations of the counter-claim. Complainant filed an answer alleging that a liquidation of the partnership business shortly after his partner's death would have realized much less than a liquidation at that (November, 1936) time.
Following the final hearing of the cause, Vice-Chancellor Buchanan on August 30th, 1937, filed his conclusions which are reflected in the decree of the court dated October 4th, 1937. The decree adjudged, inter alia, that the net value of the assets of the partnership as of January, 1931, was the equivalent of the book value of the net worth of the partnership at that time, viz., $259,199.49, plus $10,000 for good *Page 613 
will, an item not reflected on the books, and that the liability to the infant counter-claimant was one-third of this amount, or $89,733.16. On appeal the appellate court held at 123 N.J. Eq. 602,605; 199 Atl. Rep. 35, that the court was in error in using book value as the basis of liability and determined that the infant was entitled to one-third of the amount of money which should have been realized upon a liquidation of the partnership as of the time the corporation was formed. The corporation, the surviving partner, and the widow were adjudged to be jointly and severally liable to the guardian of the infant. The appellate court further said: "Upon payment of this sum, stock should be canceled as the equities may require, and the corporation should be dissolved and the remaining stockholders should receive proportionate shares of the liquidated assets."
After the remittitur came down, this court adjudged the net value of the partnership assets as of January 27th, 1931, to be the same amount as was previously determined to be the book value (plus good will), and again fixed liability to the infant counter-claimant at $89,733.16. Upon the second appeal reported at 125 N.J. Eq. 466; 6 Atl. Rep. 2d 200, the court affirmed this portion of the decree.
A final decree dated June 6th, 1939 (as of May 15th, 1939) was entered which determined that the will of Patrick J. Smith was void and the probate thereof and grant of letters testamentary thereunder were improper, and the widow was not thereby constituted the lawful executrix of his estate; that the agreement of January 27th, 1931, among the surviving partner, the widow individually and as executrix, and their respective brothers was ineffectual as against the infant and her interest in the estate of her father, and that under the circumstances of this case, if the right of the infant could then be secured, the entire proceeding under the contract would be set aside; that the infant was equitably entitled to two-thirds of the net personal estate of her father, whose estate was entitled to one-half of the net value on liquidation of the partnership assets and that the right of the infant was in one-third (to wit, two-thirds of the said one-half) of the net value on liquidation of the partnership assets; that the *Page 614 
corporation was liable to the infant for one-third of said value, except to the extent that said amount may be diminished by payments theretofore made or which might thereafter be made to or for the benefit of the infant in satisfaction of her share and accounted for to her as the same may appear upon a due accounting; that to the extent that the corporation should pay, or that there should be paid out of the assets of the corporation, directed by this decree to be dissolved, the value of the one-third of the partnership assets as directed by this decree or as might thereafter be directed by the court, a corresponding percentage of the stock issued by the corporation to the widow as executrix of the alleged will of Patrick Smith should be surrendered to the corporation, or to its trustees upon dissolution, and be canceled; that the surviving partner and widow and the corporation were jointly and severally liable to the infant for the amount adjudged thereunder and that to the extent of any payment made by the widow, she was entitled to a corresponding percentage of the stock issued by the corporation to herself as executrix, and that if the surviving partner should make any payment under the decree, he would be entitled to a corresponding percentage of the stock issued by the corporation to the widow-executrix; that the value of one-third of the partnership assets for which the corporation, the surviving partner, and the widow were jointly and severally accountable to the infant was the sum of $89,733.16 to which interest was to be added and computed from January 27th, 1931, and from which was to be deducted two-thirds of the moneys paid by the corporation to the widow individually or as executrix, for dividends, redemption of stock, interest on preferred stock, which two-thirds was adjudged to be moneys paid on account of the principal of the equitable value of the interest of the infant in the partnership assets (and to be chargeable against the widow both as administratrix and individually); that the net amount for which said joint and several liability was fixed in favor of said infant with respect to the matters above mentioned as of the date of this decree (June 6th, 1939), was the sum of $99,657.06 with interest from May 15th, 1939; that a decree against said joint and several obligors in the aforesaid amount *Page 615 
was made, but that no execution issue until after the dissolution and liquidation of the corporation; and that if moneys should be received by the infant or her guardian as the proceeds of such liquidation, the surviving partner and widow would be entitled to credit therefor; that in the event the widow and surviving partner or either of them should make payment as directed by this decree, they would each be entitled to the percentage of the corporate stock issued to the estate of Patrick Smith, representing the value of the one-third of the net assets of the partnership (of Smith Kanzler, Inc. — sic) which their respective payments would bear to the whole value of said one-third * * *; that all further equity as to the rights of the corporation, the surviving partner and the widow as among themselves be reserved until compliance with the terms of this decree and the cause is reserved for such orders or decrees as might be made with reference to such equity at the foot of the decree. By the final decree following the remittiturs on both the first and second appeals, the corporation was ordered dissolved, its directors then serving to act as its trustees upon dissolution. After the entry of said decree, the business of the corporation was continued by said trustees pursuant to the decree of the court.
Attempts to refinance the business failed, and the trustees commenced to liquidate. In the month of April or May, 1940, petitioner and some associates offered to form a corporation and purchase the remaining assets of the business for the amount of the decree plus interest. The trustees submitted this offer to the court for advisory instructions, with the result that on May 23d 1940, they were instructed not to accept the proposals. The order directed that a public sale of all the assets of the corporation be held, and a special master was appointed to make such sale, which should be subject to confirmation by the court.
The special master duly made proper sale of the corporation's assets on July 16th, 1940. The sale in bulk evoked a bid of $65,000 made by the widow as guardian of the infant, which being higher than the total of bids for the assets offered in ten separate parcels, became the successful bid. Objections to confirmation were filed by the petitioner, who sought to *Page 616 
have the court withhold confirmation of the sale unless the guardian of the infant counter-claimant should consent to credit upon the decree the fair value of the assets so sold, upon the ground that the sale price was unconscionably lower than the actual value of said assets because of a lack of competitive bidding, the then existing condition of economic emergency, and the financial inability of the petitioner (obligor) to bid to protect himself at the sale. The objections were overruled and the sale confirmed by order which also provided: "* * * There is reserved to the aforesaid complainant, George Kanzler, the right to apply to this court hereafter, if and when proper circumstances arise, for some additional credit against his liability under the original decree herein. If and when such an application be made by the said George Kanzler, the confirmation of the public sale shall be without prejudice or controlling effect as regards such application." The opinion preceding the order may be found reported in 129 N.J. Eq. 411; 20 Atl. Rep.
2d 590, and was affirmed.
On September 3d 1940, the widow as general guardian of her daughter took possession of the assets of the corporation purchased by her at the special master's sale. The general guardian, pursuant to an order of the court dated September 17th, 1940, credited the sum of $60,675.27 against the balance due on the final decree.
Efforts on the part of petitioner and others to purchase the business and assets for an amount sufficient to pay the amount of the decree prior to the credit under the order of September 17th, 1940, were unavailing.
In August, 1941, petitioner filed a petition in this cause praying, inter alia, that the guardian of the infant counter-claimant be ordered to offer for sale the business and assets at a price sufficient to satisfy the full balance on the infant's decree or, in the alternative, if she desired to retain the business and assets, to cancel and discharge the decree as against the petitioner. By order dated December 16th, 1941, the subject of the petition was continued for further consideration and determination, but I am unable to discover that any determination of the application was ever made. *Page 617 
On December 16th, 1941, the guardian ad litem and general guardian of the infant obtained an order requiring the petitioner to appear before a master and make discovery in aid of the enforcement of the infant's decree against the petitioner and others. Hearings were adjourned from time to time, and although petitioner did appear, no actual examination was had. During all this interval of time, petitioner was unable propitiously to start in business because of the money decree outstanding against him. No steps were taken by the general guardian, guardian adlitem or the solicitor for the infant to enforce the decree against the mother individually or against her interest in her husband's estate; nor was any such step taken by the daughter after she became of age; nor did the widow make any payment on account of her liability under the decree after the 1940 liquidation of the assets.
On February 6th, 1942, Mary Patricia Smith attained her majority. On April 7th, 1942, decrees were made in this court without notice to or consent of the petitioner, discharging the guardian ad litem and general guardian. On August 31st, 1943, the daughter married. Her marriage name is Jeffords.
The widow as general guardian of the infant took over the business and assets of the corporation from the time the sale was confirmed, and continued the operation of the business for several months. Early in the month of January, 1941, the widow caused Smith Kanzler Corporation to be incorporated in New Jersey for the purpose of having it acquire the business and all of the assets formerly of Smith Kanzler, Inc., and as general guardian she made the transfer to the corporation without leave of court, and without the knowledge or consent of the petitioner.
The allegations of the petition beginning with paragraph 70 detail the corporate stock structure of Smith Kanzler Corporation, the fiscal statement of the corporation, the names of the stockholders and the extent of their holdings, the gift of shares of stock from the daughter (now of age) to her mother, the salaries paid to the various officers of the corporation all related to Mrs. Smith, the net income of and tax paid by the corporation, the dividends declared, paid, and *Page 618 
the recipients thereof, the fact that the business of the corporation was substantially the same as its corporate predecessor, and that the fixed assets, with a certain few exceptions, were substantially the same, the depreciation schedule showing amounts claimed and allowed, a statement showing liquid assets and inventories, and total liabilities, net profit and loss figures for both corporations as shown for income tax purposes and also the gross sales for both; the alleged annual average net loss of $777 during the nine years of operations of Smith Kanzler, Inc., and an alleged annual average of net profits of $11,496 during the four years of the operations of Smith Kanzler Corporation, and a comparative analysis of the salaries paid to the officers of the respective corporations, an analysis of the bad debt accounts and bad debt reserve of each of the corporations and, likewise, an analysis of depreciation of buildings, machinery, and equipment. The factory building at Carey, Ohio, which was owned by Smith and Kanzler, Inc., was maintained and carried by it at a cost of almost $1,000 a year, and was sold in 1940. Thus, it was never owned, maintained or carried by the new corporation.
On May 1st, 1945, the entire outstanding capital stock consisting of 100 shares of the corporation was sold to Leonard Diener and Beatrice Diener. They acquired said stock and the assets represented thereby for their own benefit for the sum of $134,250, which was paid to the mother for ninety-nine shares of the stock, and $1,500 to the daughter for the remaining one share of the stock. The sale embraced substantially the entire business and the assets formerly of Smith and Kanzler, Inc. The sale was arranged and consummated without the knowledge of the petitioner, who learned of it shortly thereafter. From the information obtained by the petitioner, he believed that the amount realized upon the sale exceeded the balance due on the infant's decree (before crediting the $65,000 bid price on the decree as aforesaid) plus interest from September 3d 1940, to date. The petitioner believed that he was entitled (under the express reservation in the order of August 27th, 1940) to a credit upon the decree against him which would wholly satisfy and discharge the *Page 619 
deficiency decree against him. Petitioner thereby requested the daughter to satisfy and discharge the decree in her favor as against the petitioner, and if that were not done, to furnish him with information and details as to the profits of the past since it was taken over on September 3d 1940, and the consideration and details of the sale of the corporate stock. Both requests were refused.
On October 23d 1945, petitioner filed a petition for discovery and relief against the daughter and the widow praying discovery, and restraint against the daughter from enforcing her decree as against the petitioner, and cancellation and discharge of the decree against petitioner. The application was vigorously contested and affidavits by the mother and daughter were filed in opposition. By the affidavits, the petitioner learned for the first time that the corporate stock of Smith and Kanzler Corporation had been the subject of certain gifts by the daughter to the mother as set forth in paragraph 75 of the petition. However, according to paragraph 28 of the answer to the petition, the date of the initial gift is alleged as June 9th, 1942, but I do not perceive at this moment the materiality of this variance. The daughter by her affidavit claimed a balance due her on the decree of $46,584.73 as of November 15th, 1945. On the latter date the daughter gave notice of an application for an order directing the petitioner to make discovery in aid of the enforcement of the deficiency decree against him. No such application was made as against the mother, also an obligor, under said decree.
On December 3d 1945, an order was made directing the daughter and the mother to make discovery, also deferring pendente lite
the enforcement of the decree against the petitioner. Upon the entry of said order, the daughter offered to furnish the information sought in lieu of discovery and formal proofs. Pursuant thereto, informal discovery was had, certain facts were agreed upon, and a stipulation of facts was prepared but never signed, evidently for the reason that the daughter intended to discharge said decree on or about November 1st, 1946.
On or about November 6th, 1946, the daughter, without the consent of the petitioner, filed a warrant for the satisfaction *Page 620 
of the decree. The petitioner, immediately upon learning of the filing of the warrant, gave notice of his application to delimit the apprehended scope of the warrant with the result that on December 24th, 1946, an order was made providing that the clerk enter a satisfaction of the monetary effectiveness of the decree in favor of the daughter, retaining however the cause for the making of such orders and decrees as might be deemed proper to adjust the equities of the parties, if any, pursuant to the decree made on June 6th, 1939.
In the light of those events, the petitioner charges that the equities and rights of the widow, Smith and Kanzler, Inc., and himself, as among themselves, ought now to be adjusted.
In addition to discovery, the petitioner prays:
"3. That an account may be taken and stated and that this Honorable Court may determine:
"(a) What sums have been realized upon and pursuant to the enforcement of the Decree herein and by whom such sums have been paid, and what sums ought in justice and equity be paid by the said Mary A. Smith to your petitioner or to the said Smith 
Kanzler, Inc., by way of contribution.
"(b) What sums have been realized upon and pursuant to the enforcement of the Decree herein in excess and overpayment of the true amount due on said Decree, and what part of such overpayment has been realized by the said Mary A. Smith, and what disposition and distribution of such overpayment ought in justice and equity be made to your petitioner or to the said Smith Kanzler, Inc., and what sum ought be paid by the said Mary A. Smith to your petitioner or to the said Smith Kanzler, Inc., in consequence thereof.
"(c) What sums in addition to the payments aforesaid, have been improperly paid out, distributed and wasted by the said Mary A. Smith, and what portion of said sums ought in justice and equity be paid by the said Mary A. Smith to your petitioner or to the said Smith Kanzler, Inc.
"(d) What sums have been realized by the said Mary A. Smith from your petitioner's one-half interest in said business and assets, whereof she has fraudulently deprived your petitioner and converted the same to her own use and benefit.
"4. That the said defendant, Mary A. Smith, may be *Page 621 
Ordered and Decreed to pay to your petitioner and to Smith 
Kanzler, Inc., all sums which may be found due and owing by her upon such accounting.
"5. That any moneys to which the said Smith Kanzler, Inc., may be found to be entitled, may be Ordered and Decreed to be divided and distributed one-fourth to Mary A. Smith and three-fourths to your petitioner."
I must recognize and respect the several orders and decrees previously made in the cause and strive to catch sight of the intent and purpose by which my learned predecessor was actuated in making them.
Obviously, the petitioner and Mrs. Smith were not in the circumstances regarded as wanton joint tort feasors in the strict legal sense. In the view of equity they have been recognized as trustees who without bad faith unlawfully exercised dominion over the property of the daughter, Mary Patricia.
Succinctly stated, the principle of contribution is equality in bearing a common burden. The doctrine of contribution had its origin in courts of equity upon the principle that equality among those in aequali jure is deemed to be equity. The familiar rule that as between conscious, willful, malicious, or intentional wrongdoers or tort feasors who are in pari delicto, neither law nor equity will intervene to adjust the damage by affirmatively enforcing contribution, is in reality an exception to the general doctrine.
There is no doubt that where two trustees have participated in a misconceived breach of trust and thereby incurred a common monetary obligation, equity subject to some exceptions which I do not find to be here implicated will decree as between the trustees reimbursement and contribution to equalize the proportionate liability of each. Scott on Trusts, § 258.
Manifestly a trustee who has committed a breach of trust in bad faith is not morally and equitably entitled to contribution or indemnity from his co-trustee.
I do not feel privileged now to deform the aspect which this case has consistently displayed throughout its elongated existence. Nowhere in its annals have I been able to discover any argumentative accusation on behalf of the injured daughter *Page 622 
or any recriminatory charges by either the present petitioner or Mrs. Smith that a purpose to defraud the daughter was ever deliberately intended.
In this particular, I deem it informative to reanimate the words expressed by the Court of Errors and Appeals (123 N.J. Eq. 602,604, 605; 199 Atl. Rep. 35): "The infant daughter, the will being void, was entitled to two-thirds of the estate left by her father. The probate of the will, the formation of the corporation, and the other acts of the widow in seizing her husband's entire estate was obviously improper and for such acts she was rightly held to account.
 * * * * * * *
"Upon the death of Smith, Kanzler, the surviving partner, was under a duty to dispose of the firm's assets and pay over one-half of the net proceeds to the legal representative of the deceased partner's estate. The decedent's will having been improperly probated, the widow illegally entered into the contract for the formation of the corporation. All steps thereafter taken were prejudicial to the rights of the infant. It would have been improper for the guardian of the infant to have made an investment in stock in a manufacturing concern. It could never be for the best interest of the infant to be an investor in a business enterprise. * * * Neither the surviving partner nor the widow should be unduly penalized for that which was done. Though told the will was void, it was actually probated. This, no doubt, lulled their conscience. * * * The corporation, the surviving partner, and the widow are all jointly and severally liable to see to it that the infant's guardian is paid the sum of money which should have been realized upon the liquidation of the partnership assets as of the time the corporation was formed. Upon payment of that sum, stock should be canceled as theequities may require. * * *"
In conformity with that conception of the circumstances, an eventual adjustment of the equities between the petitioner and Smith and Kanzler, Inc., and Mrs. Smith has not only remained in contemplation but has indeed been the subject of express reservation in succeeding orders and decrees of this court. *Page 623 
Vice-Chancellor Buchanan concluded that without any moral turpitude the petitioner and Mrs. Smith undertook to pursue that which they conceived to be an amicable and expedient arrangement and that none of the parties had "forfeited the right to have equitable adjustments made concerning their respective interests, so that complete equity may be accomplished." He resolved that "all further equity as to the rights of Smith and Kanzler, George Kanzler and Mary A. Smith as amongst themselves" be reserved and that the cause be retained to await "such orders and decrees as may be deemed proper to adjust the equities of the parties upon compliance with this Decree."
The circumstances do not in my judgment warrant any discrimination in the degree of liability of the petitioner and Mrs. Smith under the decree. They will accordingly be regarded as having been equally culpable. Cf. McCartin v. Traphagen,43 N.J. Eq. 323; 11 Atl. Rep. 156; affirmed, 45 N.J. Eq. 265;17 Atl. Rep. 809.
To epitomize the long story, it is not specious or too imaginative, I think, to represent the present situation essentially as one in which the monetary award to the daughter for the payment of which the petitioner and Mrs. Smith were jointly and severally liable has been paid with the proceeds of an eventual sale of the assets of the original partnership. The equitable interest of the petitioner in those assets and in the proceeds of their sale was one-half, that of Mrs. Smith individually was one-third of the one-half interest therein of her deceased husband.
Actually, the satisfaction of the award has been accomplished by the application thereto of the proceeds of the business and assets of Smith and Kanzler, Inc. In the circumstances it does not seem to me to be of any pragmatical significance whether Smith and Kanzler, Inc., is characterized as a stake-holder or as a trustee which, being also obligated to account, has discharged the award with its resources. The equitable interests of the petitioner, of Mrs. Smith, and of the daughter Patricia in Smith and Kanzler, Inc, retain the same ratio. *Page 624 
The conclusion is that the petitioner is equitably entitled to contribution from the defendant Mrs. Smith.
The brief submitted on behalf of Mrs. Smith is addressed exclusively to the primary question concerning the alleged right of the petitioner to any contribution. Counsel for the petitioner have submitted a proposed formula for the calculation of the amount of reimbursement claimed by the petitioner. If unable to agree, counsel may discuss that subject upon the settlement of the decree. *Page 625