590 A.2d 222

THOMAS BLAZOVIC AND MILDRED COURTIS BLAZOVIC, HIS WIFE, PLAINTIFFS–APPELLANTS AND CROSS–RESPONDENTS, v. JAMES ANDRICH, JAMES PHILBIN, DEAN ANGELO, VINCENT LABANCA, LOUIS ZECCHINO, JOHN DOE (NAME UNKNOWN), INDIVIDUALLY AND AS BARTENDER OF THE PLANTATION RESTAURANT AND LOUNGE, DEFENDANTS, AND JAMES CORSI, JR., INDIVIDUALLY AND AS OWNER OF THE PLANTATION RESTAURANT AND LOUNGE, AND THE PLANTATION RESTAURANT AND LOUNGE, DEFENDANTS–RESPONDENTS AND CROSS–APPELLANTS.

Argued October 22, 1990—Decided May 22, 1991.

The opinion of the Court was delivered by

STEIN, J.

The critical issue in this appeal is whether the Comparative Negligence Act, *N.J.S.A.* 2A:15–5.1 to –5.8 (the Act), requires the trier of fact to apportion fault between a plaintiff, a

negligent co-defendant, and several settling co-defendants whose alleged fault was based on intentional conduct. We hold that the Act applies, and consequently remand to the trial court to apportion fault among all the parties and mold the verdict accordingly.

## I.

On August 19, 1982, plaintiff, Thomas Blazovic, his companion Mildred Courtis,[1] and a small group of friends gathered at the Plantation Restaurant and Lounge (Plantation) in Fairfield.[2] Defendants James Andrich, James Philbin, Dean Angelo, Vincent LaBanca, and Louis Zecchino were also at Plantation that night. The two groups sat at opposite ends of the barroom and had no contact while inside the bar. Those defendants left Plantation at approximately 11:15 p.m. Approximately fifteen minutes later, plaintiff and his friends also left the bar. The ensuing events are disputed. Plaintiff contends that while in Plantation's parking lot, he observed a group of people, including defendants, throwing stones or rocks at a nearby sign. Plaintiff testified that he politely asked them to stop, at which point the group ran toward him, pushed him to the ground, and proceeded to punch and kick him. Those defendants claim that on leaving the bar, they remained in Plantation's parking lot, throwing small stones to see who could come closest to a nearby sign. Defendant Andrich testified that a short time later, plaintiff came out of Plantation and began swearing at

---

[1]Mildred Courtis later married Thomas Blazovic and was originally a plaintiff in this action. However, the jury determined that she had no cause of action against defendants. Consequently, the term plaintiff refers solely to Thomas Blazovic.

[2]The parties did not provide the Court with the trial transcript. After oral argument, we requested that the parties supplement the record with the trial-court jury charge. The facts set forth herein are based in part on factual recitations contained in the jury charge.

defendants. Both sides agree that a member of that group of defendants began the physical confrontation.

In 1984, plaintiff instituted this negligence action against Plantation and its owner James Corsi, Jr. on the grounds that they had failed to provide adequate lighting and security for patrons in the restaurant's lot, and also had failed to exercise reasonable care in disbursing alcoholic beverages to the assailants. Plaintiff also alleged that defendants Andrich, Philbin, Angelo, LaBanca, and Zecchino had negligently or intentionally struck him as he left the Plantation, causing plaintiff to sustain physical injuries and economic loss. Each defendant denied fault and filed cross-claims for contribution.

Plaintiff settled prior to trial with defendant Zecchino for $1,000. After jury selection but before opening statements, plaintiff settled with defendant Angelo for $12,500, and with defendants Andrich, Philbin, and LaBanca for $2,750 each for a total of $21,750. Plantation's owner, Corsi, was dismissed as an individual defendant in the course of trial.

In answers to special interrogatories, the jury found Plantation negligent and determined that its negligence had been a proximate cause of plaintiff's injuries. The jury also found that defendants Andrich, Philbin, LaBanca, and Angelo had not been negligent, but instead found that they had committed an intentional assault and battery against Thomas Blazovic. Finally, the jury found that plaintiff's own negligence had contributed to his injuries. The trial court, apparently of the view that negligent conduct could not be compared with intentional conduct, instructed the jury to compare only the relative fault of the two negligent parties, plaintiff and Plantation. The jury awarded Blazovic $150,000 in compensatory damages, apportioning seventy percent of the causal negligence to Plantation and thirty percent to plaintiff.

The trial court molded the verdict. First, the court reduced the judgment by thirty percent to reflect the jury's apportionment of fault to plaintiff. The court then divided the balance of

$105,000 on a *pro rata* basis among Plantation and the four individual defendants. (The issue of Zecchino's liability was not presented to the jury, and his $1,000 pretrial settlement was excluded from the court's pro rata calculation.) Plaintiff's recovery totaled $42,750, consisting of $21,750 from the settling defendants and a $21,000 judgment against Plantation representing its *pro rata* share of the judgment reduced to reflect plaintiff's negligence, plus prejudgment interest assessed against Plantation's insurer, Midland Insurance Company (Midland).

Plaintiff appealed to the Appellate Division, asserting two points of error. First, he argued that the trial court's molding of the verdict was incorrect. Specifically, Blazovic asserted that the Act mandates apportionment of fault among all parties to an injury, and that Plantation should have received a credit calculated on the basis of the settling defendants' percentage of fault. However, because no percentage of fault had been allocated to the intentional tortfeasors, plaintiff concluded that Plantation was responsible for the seventy percent of the fault attributed to it by the jury, less a *pro tanto* reduction for the $21,750 plaintiff had received from the settling tortfeasors. Second, Blazovic argued that the trial court had erred in not assessing prejudgment interest against Plantation.

In an unpublished opinion, the Appellate Division modified the trial court's judgment. The majority held that the jury verdict was incomplete because the jury did not apportion a percentage of fault to the intentional tortfeasors. The court determined, however, that because the parties had not requested apportionment, they had waived their right to a jury trial on that issue. Consequently, the court apportioned fault through a two-step process. First, the court determined that because the intentional tortfeasors had acted in a "concerted and conspiratorial" manner, their fault should be considered collectively in relation to that of Plantation. Second, the court determined that the injuries to plaintiff were "indivisible and * * * incapable of any reasonable or practical division," and therefore

assessed fifty percent of the fault to Plantation and fifty percent to the intentional tortfeasors as a group. Consequently, the court calculated Plantation's liability by subtracting $22,500—plaintiff's thirty-percent allocation of fault—from $75,000—Plantation's fifty-percent share of the $150,000 verdict—resulting in a total judgment of $52,500. The court affirmed the trial court's decision denying prejudgment interest against Plantation and vacated the judgment assessing prejudgment interest against Midland. The Appellate Division permitted plaintiff to reassert that claim for prejudgment interest either administratively or against Midland's receiver. That issue is not before us in this appeal.

The dissenting member, Judge Landau, agreed with the majority to the extent that it reversed the trial court's *pro rata* apportionment of fault. However, the dissent asserted that the "unique circumstances" warranted a re-examination of "previous attempts to harmonize the policies of comparative negligence with the equitable and statutory underpinnings of contribution among tortfeasors." The dissent reasoned that in cases where a commercial proprietor breaches its duty to maintain safe premises, the plaintiff should not be precluded from recovering the full consequences of the proprietor's negligence:

Those consequences are expressed by taking the damages from the assault and subtracting any recovery against the assaulters. If this technique is not employed, then the results in cases like *Butler [v. Acme Markets, Inc.*, 89 *N.J.* 270, 445 *A.*2d 1141 (1982)] could readily be undone. A negligent property owner need only join the known or unknown "John Doe" assailants as third-party defendants. Clearly the assailants' paramount, and probably exclusive, responsibility for the victim's beating will be reflected in the jury's percentage allocation of fault. Thus, under the newly amended Comparative Negligence law, *N.J.S.A.* 2A:15–5.3, the injured party would be left to his dubious remedy against unknown assailants. In this case, only the majority's independent, but not legally predictable, declaration that the assailants should be grouped as one tortfeasor prevented a result which would have diluted the victim's recovery by the number of assailants. Had more people assaulted him, he would have recovered even less from Plantation because of the pre-trial settlements.

Recognizing that its approach might unfairly penalize Plantation, the dissent urged a limited exception to the State's indemnity doctrine, which prevents indemnity among joint wrong-

doers. The dissent reasoned that an exception is warranted where a defendant's negligence consists only of failing to secure adequately against the independent intentional wrongdoing of third parties that results in injury to a plaintiff.

Plaintiff appealed to this Court as of right. *R.* 2:2-1(a)(2). Plantation filed a notice of cross-appeal and a petition for certification, advancing issues relating to the molding of the verdict not addressed by the dissent. We granted certification, 121 *N.J.* 611, 583 *A.*2d 312 (1990).

## II.

The adoption of the Comparative Negligence Act in 1973 reflected a legislative decision to ameliorate the harsh results that accompanied the common-law doctrine of contributory negligence. *Ostrowski v. Azzara,* 111 *N.J.* 429, 436, 545 *A.*2d 148 (1988). Under the earlier scheme, a negligent plaintiff was precluded from any recovery even when the plaintiff's negligence was substantially less than the defendant's. *Maccia v. Tynes,* 39 *N.J.Super.* 1, 7, 120 *A.*2d 263 (App.Div.1956).

In a concurring opinion foreshadowing the Act's adoption, Justice Francis noted that

[t]he rule that contributory negligence is a complete bar to recovery was imported into the common law by judges. Whatever may have been the historical justification for it, today it is almost universally regarded as unjust and inequitable to visit an entire accidental loss on one of the parties whose negligent conduct combined with the negligence of the other party to produce the loss. If fault is to remain the test of liability, then the doctrine of comparative negligence which involves apportionment of the loss among those whose fault contributed to the occurrence is more consistent with liability based on a fault premise.

The principle of comparative negligence represents a more just and socially desirable distribution of loss than that ever achieved by the application of the long-standing rule of contributory negligence. [*O'Brien v. Bethlehem Steel Corp.,* 59 *N.J.* 114, 126, 279 *A.*2d 827 (1971).]

The change to a comparative-negligence system eliminated the "all or nothing" approach to tort recovery in favor of apportionment of liability among all parties to an action in rough equivalence to their causal fault. See W. Keeton, D.

Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on the Law of Torts* § 67, at 468–71 (5th ed. 1984) (*Prosser & Keeton*). Under the Act, a plaintiff equally negligent as or less negligent than the defendant is not barred, but recovery is instead diminished by the percentage of negligence attributed to the plaintiff by the trier of fact. *N.J.S.A.* 2A:15–5.1.

The Act requires the trier of fact to determine

a. The amount of economic and noneconomic damages which would be recoverable by the injured party regardless of any consideration of negligence, that is, the full value of the injured party's damages;

b. The extent, in the form of a percentage, of each party's negligence. The percentage of negligence of each party shall be based on 100% and the total of all percentages of negligence of all the parties to a suit shall be 100%. * * *. [*N.J.S.A.* 2A:15–5.2.]

The trial court must then mold the verdict based on the findings of the trier of fact. *N.J.S.A.* 2A:15–5.2(c).

It is now well-settled that the Act's application is not limited to negligence actions. In *Suter v. San Angelo Foundry & Machine Co.*, 81 *N.J.* 150, 406 *A.*2d 140 (1979), a sheetmetal worker filed a strict-liability action against the manufacturer of a sheetmetal rolling machine due to injuries sustained by the worker when his hand became caught in the machine. The manufacturer sought to bar any recovery, relying on the alleged contributory negligence of the injured plaintiff and the inapplicability of the Comparative Negligence Act to a strict-liability claim. The Court rejected the contention that the Act was limited to negligence actions, reasoning that that limitation would frustrate the legislative intent to mitigate the unfairness associated with the total bar to recovery posed by common-law contributory negligence. *Id.* at 161, 406 *A.*2d 140. Consequently, we determined that "the [A]ct was intended to cover fault in a broader sense rather than in the narrow negligence concept." *Id.* at 162 n. 2, 406 *A.*2d 140. Although we found that the plaintiff's conduct did not constitute contributory negligence, *id.* at 167, 406 *A.*2d 140, we held that fault could be apportioned under the Act between strictly-liable and negligent parties. *Id.* at 164, 406 *A.*2d 140; *see also Ryan v. KDI Sylvan*

*Pools, Inc.,* 121 *N.J.* 276, 579 *A.*2d 1241 (1990) (apportioning fault among negligent plaintiff, negligent defendant, and strictly-liable defendant); *Cartel Capital Corp. v. Fireco of N.J.,* 81 *N.J.* 548, 410 *A.*2d 674 (1980) (fault of negligent and strictly-liable tortfeasors can be apportioned); *Lee's Hawaiian Islanders, Inc. v. Safety First Prods.,* 195 *N.J.Super.* 493, 506, 480 *A.*2d 927 (App.Div.) (remanding issue of apportionment to trial court to determine percentage of fault among negligent and strictly-liable co-defendants), *certif. denied,* 99 *N.J.* 205, 491 *A.*2d 703 (1984).

Comparative negligence principles have also been applied to conduct characterized as wanton and willful. In *McCann v. Lester,* 239 *N.J.Super.* 601, 571 *A.*2d 1349 (App.Div.1990), the plaintiff's medical-malpractice claims resulted in a jury verdict against one of two physician defendants. The defendants moved for a new trial based on evidence that the jury's deliberations were not complete, and also " 'that it was error not to give the jury the charge that * * * [the] plaintiff's conduct was willful and wanton * * * and that upon such a finding [ ] the plaintiff would be barred.' " *Id.* at 605, 571 *A.*2d 1349. The trial court granted the new trial, finding error in its failure " 'to instruct the jury that under the law of New Jersey, if they determined the plaintiff acted willfully, wantonly or recklessly, he was barred from recovery.' " *Id.* at 606, 571 *A.*2d 1349. At the second trial, the jury found no cause of action against the remaining defendant. *Ibid.* On appeal, the Appellate Division reinstated the verdict, concluding that the Act contemplated an apportionment of fault that compared defendant's negligence with plaintiff's alleged willful and wanton conduct. The court reasoned that

> when percentages must be allocated in a multi-party case, it serves the interest of justice and our expanded concept of comparative fault for percentages also to be attributed to the conduct of the willful, wanton or reckless party, as well as the party who is merely negligent. As we have been taught by *Suter v. San Angelo Foundry, supra,* the labels attached by the law to various types of conduct should not thwart the principle that it is the overall fault of the parties which is to be measured.

[*Id.* 239 *N.J.Super.* at 609–10, 571 *A.*2d 1349 (footnote omitted).]

*See also Foldi v. Jeffries*, 93 *N.J.* 533, 548, 461 *A.*2d 1145 (1983) (comparative fault of parents who willfully and wantonly failed to supervise their child should be "factored into" allocation of liability in cases involving third-party tortfeasors). The *McCann* holding is in accord with those of several other jurisdictions. *See, e.g., Plyler v. Wheaton Van Lines*, 640 *F.*2d 1091, 1092 (9th Cir.1981); *Billingsley v. Westrac Co.*, 365 *F.*2d 619, 623 (8th Cir.1966); *Amoco Pipeline Co. v. Montgomery*, 487 *F.Supp.* 1268, 1272 (W.D.Okla.1980); *Sorensen v. Allred*, 112 *Cal.App.*3d 717, 726, 169 *Cal.Rptr.* 441, 446 (1980); *Bowman v. Doherty*, 235 *Kan.* 870, 881–882, 686 *P.*2d 112, 121–22 (1984); *Vining v. City of Detroit*, 162 *Mich.App.* 720, 727, 413 *N.W.*2d 486, 489 (1987); *Kelly v. Long Island Lighting Co.*, 31 *N.Y.*2d 25, 29, 286 *N.E.*2d 241, 243, 334 *N.Y.S.*2d 851, 854 (1972); *Bielski v. Schulze*, 16 *Wis.*2d 1, 16–17, 114 *N.W.*2d 105, 112–13 (1962).

Despite the widespread adoption of comparative-fault principles to cases involving reckless or wanton and willful conduct, most courts that have considered the issue have declined to extend comparative-fault principles to conduct characterized as intentional. *See, e.g., Li v. Yellow Cab Co.*, 13 *Cal.*3d 804, 532 *P.*2d 1226, 119 *Cal.Rptr.* 858 (1975); *Munoz v. Olin*, 76 *Cal. App.*3d 85, 142 *Cal.Rptr.* 667 (1977), *vacated*, 24 *Cal.*3d 629, 596 *P.*2d 1143, 156 *Cal.Rptr.* 727 (1979); *Carman v. Heber*, 43 *Colo.App.* 5, 7, 601 *P.*2d 646, 648 (1979); *Finnigan v. Sandoval*, 43 *Colo.App.* 219, 600 *P.*2d 123 (1979); *Sieben v. Sieben*, 231 *Kan.* 372, 378, 646 *P.*2d 1036, 1041 (1982); *Melendres v. Soales*, 105 *Mich.App.* 73, 306 *N.W.*2d 399 (1981); *Stephan v. Lynch*, 136 *Vt.* 226, 388 *A.*2d 376 (1978); *Schulze v. Kleeber*, 10 *Wis.*2d 540, 103 *N.W.*2d 560 (1960); *see also Uniform Comparative Fault Act* § 1 Comment, 12 *U.L.A.* 44 (Supp.1979) (as a general principle, Act does not include intentional torts). *See generally* Dear & Zipperstein, *Comparative Fault and Intentional Torts: Doctrinal Barriers and Policy Considerations*, 24 *Santa Clara L.Rev.* 1, 3–20 (1984) (discussing historical

development of doctrine that precludes intentional conduct from comparative-fault principles); McNichols, *Should Comparative Responsibility Ever Apply to Intentional Torts?*, 37 *Okla.L. Rev.* 641, 650–69 (1984) (same).

Courts have articulated various explanations for declining to apportion damages in cases in which one party has acted intentionally. Early cases distinguished between negligent and intentional conduct in order to circumvent the harsh effect of the contributory-negligence bar, reflecting the view that intentional tortfeasors should be deterred and required to pay damages irrespective of plaintiff's negligence. *See, e.g., Steinmetz v. Kelly*, 72 *Ind.* 442, 446 (1880) ("An intentional and unlawful assault and unlawful battery, inflicted upon a person, is an invasion of his right to personal security, for which the law gives him redress, and of this redress he cannot be deprived on the ground that he was negligent * * *."); *accord Birmingham Ry., Light & Power Co. v. Jones*, 146 *Ala.* 277, 41 *So.* 146 (1906); *Louisville & Nashville R.R. Co. v. Markee*, 103 *Ala.* 160, 15 *So.* 511 (1894); *Prosser & Keeton, supra*, § 66, at 462; Schwartz, *Li v. Yellow Cab Company: A Survey of California Practice Under Comparative Negligence*, 7 *Pac.L.J.* 747, 752–53 (1976). Other courts have reached the same result by theorizing that intentional and negligent conduct are "different in kind" and therefore not susceptible to comparison. In an early application of that theory, the Michigan Supreme Court declined to compare negligence and intentional conduct, stating that if "one willfully injures another * * * he is guilty of more than negligence. The act is characterized by willfullness, rather than inadvertence, it transcends negligence—[it] is different in kind." *Gibbard v. Cursan*, 225 *Mich.* 311, 321–22, 196 *N.W.* 398, 401–02 (1923); *accord Jackson v. Brantley*, 378 *So.*2d 1109, 1111 (Ala.App.), *aff'd sub nom. Ex Parte Jackson*, 378 *So.*2d 1112 (1979); *Frontier Motors v. Horrall*, 17 *Ariz.App.* 198, 201, 496 *P.*2d 624, 627 (1972); *Civille v. Bullis*, 209 *Cal.App.*2d 134, 138, 25 *Cal.Rptr.* 578, 581 (1962); *Jenkins v.*

*North Carolina Dep't of Motor Vehicles*, 244 *N.C.* 560, 564, 94 *S.E.*2d 577, 581 (1956).

Some jurisdictions, however, have permitted apportionment of fault between negligent and intentional tortfeasors. For example, in *Comeau v. Lucas*, 90 *A.D.*2d 674, 455 *N.Y.S.*2d 871 (App.Div.1982), an intoxicated rock-band member hired to play at a private party attacked and beat one of the guests who was also intoxicated and disruptive. The trial court instructed the jury to apportion damages between the negligent plaintiff and the intentionally-tortious defendant. In doing so, the jury reduced plaintiff's recovery by ten percent due to his contributory negligence. *Id.* at 674, 455 *N.Y.S.*2d at 872. Although the appellate court ordered a new trial on separate grounds, it approved of the trial court's apportionment of fault. *Id.* at 675, 455 *N.Y.S.*2d at 873; *see also Baugh v. Redmond*, 565 *So.*2d 953 (La.Ct.App.1990) (comparative fault principles should apply in battery action if plaintiff's words or actions are sufficient to establish provocation); *Lomonte v. A & P Food Stores*, 107 *Misc.*2d 88, 438 *N.Y.S.*2d 54 (App.Term 1981) (plaintiff's intentionally-tortious conduct should be apportioned in negligence action against employer of store clerk who struck plaintiff); *Uniform Comparative Fault Act* § 1 Comment, 12 *U.L.A.* 44 (1979) (generally, intentional torts are not included within Act; however, "a court determining that the general principle should apply at common law to a case before it of an intentional tort is not precluded from that holding by the Act"). *See generally* Dear & Zipperstein, *supra*, 24 *Santa Clara L.Rev.* at 36 (advocating comparative-fault system that permits courts, in individual cases, to instruct jury to compare intentional and negligent conduct); McNichols, *supra*, 37 *Okla.L.Rev.* at 698 (same); Note, *Comparative Fault And Intentional Torts*, 12 *Loy.L.A.L.Rev.* 179 (1978) (advocating extension of comparative-fault concepts to actions involving intentional tortfeasors).

Our cases have yet to consider the applicability of comparative-fault principles to actions involving intentional conduct. As noted above, however, New Jersey courts have declined to limit

the Act to traditional negligence actions. Instead, we have read the term "negligence" in the Act "as being subsumed within the concept of tortious fault." *Suter, supra,* 81 *N.J.* at 162, 406 *A.*2d 140.

A court's determination whether certain conduct is amenable to apportionment under the Act affects not only the plaintiff's potential recovery, but also the liability among joint tortfeasors. Prior to the Act's passage, the Joint Tortfeasors Contribution Law ("JTCL"), *N.J.S.A.* 2A:53A-1 to -20, provided the means by which joint tortfeasors could seek contribution from one another for any sums paid beyond their individual *pro rata* share of the judgment. Specifically, the JTCL provides:

> Where injury or damage is suffered by any person as a result of the wrongful act, neglect or default of joint tortfeasors, and the person so suffering injury or damage recovers a money judgment or judgments for such injury or damage against one or more of the joint tortfeasors, either in one action or in separate actions, and any one of the joint tortfeasors pays such judgment in whole or in part, he shall be entitled to recover contribution from the other joint tortfeasor or joint tortfeasors for the excess so paid over his pro rata share, but no person shall be entitled to recover contribution under this act from any person entitled to be indemnified by him in respect to the liability for which the contribution is sought. [*N.J.S.A.* 2A:53A-3.]

A court determined a tortfeasor's *pro rata* share simply by dividing the total verdict by the number of available tortfeasors, that is, those solvent tortfeasors not beyond the reach of process. *Judson v. Peoples Bank & Trust Co.,* 17 *N.J.* 67, 94, 110 *A.*2d 24 (1954), *aff'd on reconsid.,* 25 *N.J.* 17, 134 *A.*2d 761 (1957).

The passage of the JTCL altered the common-law rule that had denied joint tortfeasors a right of contribution. *Young v. Latta,* 123 *N.J.* 584, 589 *A.*2d 1020 (1991). That rule permitted the entire burden of a loss for which two defendants were responsible "to be shouldered onto one alone, according to the accident of a successful levy of execution, the existence of liability insurance, the plaintiff's whim or spite, or the plaintiff's collusion with the other wrongdoer, while the latter goes scot free." *Prosser & Keeton, supra,* § 50, at 337–38 (footnotes omitted).

Equity courts first addressed the harshness of the rule and permitted contribution, but only in respect of unintentional tortfeasors. *Kanzler v. Smith*, 142 *N.J.Eq.* 609, 621, 61 *A.2d* 170 (Ch.1948). The relief was not available to "conscious, willful, malicious or intentional wrongdoers or tort feasors who are *in pari delicto.*" *Ibid.* The Supreme Court explained this denial of contribution rights on deterrence grounds, stating that such wrongdoers "must not expect that a judicial tribunal will degrade itself by an exertion of its powers by shifting the loss from the one to the other; or to equalize the benefits or burdens which may have resulted by the violation of every principle of morals and of laws." *Bartle v. Nutt*, 29 *U.S.* (4 Pet.) 184, 189, 7 *L.Ed.* 825, 827 (1830).

Critics of that modified rule questioned its logic, noting that if it does deter the paying tortfeasor from further wrongdoing, the rule encourages those who go "entirely free" to repeat the offense in spite of their equal or even greater culpability. Note, *Contribution and Indemnity Between Joint Tortfeasors*, 45 *Harv.L.Rev.* 349, 354 n. 28 (1931). Those critics urged that the deterrence goal would best be served by permitting contribution so that each intentional wrongdoer knew that such conduct exposed him or her to certain liability in some amount. See *ibid.*

In *Judson v. Peoples Bank & Trust Co., supra,* 17 *N.J.* 67, 110 *A.2d* 24, this Court considered the scope of the newly-enacted JTCL in a case involving five intentional tortfeasors. Justice Brennan, writing for the Court, concluded that the statutory language and legislative history of the JTCL left "no doubt that all torts of commission and omission were within the ambit of the law," including those characterized as intentional. *Id.* at 91, 110 *A.2d* 24. We note that *Judson* is contrary to the general view that there may be no contribution *among* intentional tortfeasors. *See* 18 *Am.Jur.2d Contribution* § 41 (1985). *The Uniform Contribution Among Tortfeasors Act,* 12 *U.L.A.* 63, § 1(c) (1955), expressly precludes contribution in favor of an intentional tortfeasor. *But see* Note, *Comparative*

*Contribution: The Legislative Enactment of the Skinner Doctrine*, 14 *J. Marshall L.Rev.* 173, 189 (1980) (discussing the Illinois contribution statute).

Although *Judson* did not address the issue of contribution between intentional and negligent tortfeasors, subsequent cases reiterate *Judson*'s refusal to limit the JTCL to negligence actions, and in effect extend *Judson* by permitting contribution among tortfeasors liable on different tort theories. *See Cartel Capital Corp. v. Fireco of N.J.*, supra, 81 *N.J.* at 567, 410 *A.*2d 674 (defendants liable on negligence and strict-liability theories could seek contribution); *Adler's Quality Bakery, Inc. v. Gaseteria, Inc.*, 32 *N.J.* 55, 77, 159 *A.*2d 97 (1960) (negligent defendant can seek contribution from strictly-liable co-defendant); *Neveroski v. Blair*, 141 *N.J.Super.* 365, 385, 358 *A.*2d 473 (App.Div.1976) ("true test for contribution is joint liability, not joint, common or concurrent wrongs").

■ The enactment of the Comparative Negligence Act modified the JTCL's *pro rata* apportionment of liability among joint tortfeasors. Joint tortfeasors no longer share liability on a *pro rata* basis, but instead on the basis of percentages of fault assigned by the trier of fact. See *N.J.S.A.* 2A:15–5.3;[3] *see Cartel Capital Corp. v. Fireco of N.J.*, supra, 81 *N.J.* at 569, 410 *A.*2d 674; *Lee's Hawaiian Islanders, Inc. v. Safety First Prods.*, supra, 195 *N.J.Super.* at 505, 480 *A.*2d 927. A party compelled to pay more than his or her percentage share can seek contribution from other joint tortfeasors. *N.J.S.A.* 2A:15–5.3(e). As noted by the Appellate Division,

[i]t is clear that the effect and intent of the Comparative Negligence Act were not only to accord a fairer result to moderately negligent plaintiffs but also to accord fairer justice to joint tortfeasors * * *. Thus, the * * * Act recognizes

---

[3]The Comparative Negligence Act was amended by *L.*1987, *c.* 325, eff. December 18, 1987, and *L.*1987, *c.* 404, eff. January 14, 1988. With some exceptions, the amendments substantially modify the rule of joint and several liability. Because the injuries were sustained in this matter on August 19, 1981, and the judgment was entered prior to December 18, 1987, the amendments do not affect this appeal.

that it was as unfair for a 10% negligent tortfeasor to bear 50% of the damages as it was for a 10% negligent plaintiff to be denied any recovery at all. [*Lee's Hawaiian Islanders, Inc. v. Safety First Prods.*, *supra*, 195 *N.J.Super.* at 505–06, 480 *A.*2d 927.]

In the event of a settlement with a joint tortfeasor, the nonsettling tortfeasor is entitled to a credit representing the settling tortfeasor's share of the judgment. *Theobald v. Angelos*, 44 *N.J.* 228, 241, 208 *A.*2d 129 (1965). Prior to the Act, the credit amounted to the settling tortfeasor's *pro rata* share of the judgment. *Ibid.; Judson v. Peoples Bank & Trust Co.*, *supra*, 17 *N.J.* at 92–93, 110 *A.*2d 24. Now, pursuant to the Act, the amount of the credit is based on the percentage of fault apportioned to the settling tortfeasor. *Young v. Latta*, *supra*, 123 *N.J.* at 592, 589 *A.*2d 1020; *accord Cartel Capital Corp. v. Fireco of N.J.*, *supra*, 81 *N.J.* at 569, 410 *A.*2d 674; *Rogers v. Spady*, 147 *N.J.Super.* 274, 277, 371 *A.*2d 285 (App. Div.1977); *Dimogerondakis v. Dimongerandakis*, 197 *N.J.Super.* 518, 521, 485 *A.*2d 338 (Law Div.1984).

### III.

■  We are unpersuaded by the decisions of other jurisdictions that reject apportionment of fault in actions involving intentional tortfeasors. See *supra* at 99–101, 590 *A.*2d at 227–228). Those decisions derive from an earlier era when courts attempted to avoid the harsh effect of the contributory-negligence defense and sought to punish and deter intentional tortfeasors. See *Steinmetz v. Kelly*, *supra*, 72 *Ind.* at 446; *see also* Prosser, *Comparative Negligence*, 41 *Calif.L.Rev.* 1, 4–7 (1953) (tracing transition from contributory-negligence rule to system based on comparative negligence). Refusal to compare the negligence of a plaintiff whose percentage of fault is no more than fifty percent with the fault of intentional tortfeasors is difficult to justify under a comparative-fault system in which that plaintiff's recovery can be only diminished, not barred. *See* Dear & Zipperstein, *supra*, 24 *Santa Clara L.Rev.* at 11 ("With the advent of comparative fault and the rejection of

contributory negligence * * * one major policy reason for ignoring the plaintiff's negligent conduct when an intentional tort is alleged—that of avoiding a bar to recovery—is gone" (footnotes omitted)).

■■ Moreover, we reject the concept that intentional conduct is "different in kind" from both negligence and wanton and willful conduct, and consequently cannot be compared with them. Instead, we view intentional wrongdoing as "different in degree" from either negligence or wanton and willful conduct. To act intentionally involves knowingly or purposefully engaging in conduct "substantially certain" to result in injury to another. *Restatement (Second) of Torts* § 8A comment b (1965). In contrast, wanton and willful conduct poses a highly unreasonable risk of harm likely to result in injury. *Id.* at § 500 comment a. Neither that difference nor the divergence between intentional conduct and negligence precludes comparison by a jury. The different levels of culpability inherent in each type of conduct will merely be reflected in the jury's apportionment of fault. By viewing the various types of tortious conduct in that way, we adhere most closely to the guiding principle of comparative fault—to distribute the loss in proportion to the respective faults of the parties causing that loss. *See O'Brien v. Bethlehem Steel Corp., supra,* 59 *N.J.* at 126, 279 *A.*2d 827 (Francis, J., concurring); *McCann v. Lester, supra,* 239 *N.J.Super.* at 609–10, 571 *A.*2d 1349. Thus, consistent with the evolution of comparative negligence and joint-tortfeasor liability in this state, we hold that responsibility for a plaintiff's claimed injury is to be apportioned according to each party's relative degree of fault, including the fault attributable to an intentional tortfeasor. *See* Sobelshohn, *Comparing Fault,* 60 *Ind.L.J.* 413, 442–43 (1985).

■■ Apportionment of fault between intentional and negligent parties will not eliminate the deterrent or punitive aspects of tort recovery. Where tortious conduct merits punitive as well as compensatory damages, a plaintiff's comparative fault

will reduce recovery only of compensatory damages. *See Amoco Pipeline Co. v. Montgomery, supra,* 487 *F.Supp.* at 1273; *Shahrokhfar v. State Farm Mut. Auto. Ins. Co.,* 634 *P.*2d 653, 659 (Mont.1981); *Comeau v. Lucas, supra,* 90 *A.D.*2d at 675, 455 *N.Y.S.*2d at 873; *see also Tampa Elec. Co. v. Stone & Webster Eng'g Corp.,* 367 *F.Supp.* 27, 38 (M.D.Fla.1973) (plaintiff's negligence will diminish recovery in face of compensatory damages, but if defendant's conduct supports award of punitive damages, plaintiff's negligence will not reduce such award); *Bowman v. Doherty, supra,* 235 *Kan.* at 882, 686 *P.*2d at 122 (permitting apportionment of actual or compensatory damages while precluding apportionment of punitive damages); *Hondo's Truck Stop Cafe, Inc. v. Clemmons,* 716 *S.W.*2d 725 (Tex.Ct. App.1986) (trial court can apportion compensatory but not punitive damages). Because punitive damages are designed to punish the wrongdoer, and not to compensate the injured party, they can neither be apportioned nor subject to contribution among joint tortfeasors. That principle will accomplish the goal of equitably dividing liability for a plaintiff's compensatory damages, while keeping intact the policy of punishing wanton or intentional acts. *See Tampa Elec. Co. v. Stone & Webster Eng'g Corp., supra,* 367 *F.Supp.* at 38.

The Appellate Division correctly concluded that the verdict was incomplete because the jury's apportionment of fault excluded the intentional tortfeasors. We also affirm that court's holding that the intentional tortfeasors, who acted together, and whose wrongful conduct was distinct from that of Plantation, should initially be treated as a single party for apportionment purposes.[4] That procedure will prevent a jury from assigning a disproportionate percentage of fault to the

---

[4]Due to the settlement and consequent release of the intentional tortfeasors in this case, there is no need to delineate further percentages of fault among the intentional tortfeasors. In a case involving nonsettling intentional tortfeasors, a trial court ordinarily should also instruct the jury to apportion fault individually among the intentional tortfeasors.

intentional tortfeasors based solely on their number. Thus, initially grouping the intentional tortfeasors together will result in the most accurate apportionment of relative fault among the negligent and intentionally-tortious parties. *See Uniform Contribution Among Tortfeasors Act* § 2(b), 12 *U.L.A.* 87 (1955) ("if equity requires the collective liability of some as a group shall constitute a single share"). *See Model Unif.Prods.Liab. Act* § 111(B)(1)(b), 44 *Fed.Reg.* 62, 734 (1979); *Uniform Comparative Fault Act* § 2(a)(2), 12 *U.L.A.* 45 (1979). *See generally* Note, *The Modification of Joint and Several Liability: Consideration of the Uniform Comparative Fault Act,* 36 *U.Fla.L.Rev.* 288, 306 (1984) (discussing treating two or more persons as single party for purposes of allocation of fault).

■ Although the Appellate Division determined that comparison of intentional wrongdoing with negligent conduct is theoretically feasible, it concluded that under these circumstances the fault of the parties is "indivisible and * * * incapable of apportionment." We disagree. The fact that the tortfeasors acted separately and are liable on different theories for plaintiff's injuries does not preclude apportionment. *See Ryan v. KDI Sylvan Pools, Inc., supra,* 121 *N.J.* 276, 579 *A.*2d 1241 (apportioning fault between negligent plaintiff, negligent defendant, and strictly-liable defendant for injuries sustained when plaintiff negligently dove into shallow pool); *McCann v. Lester, supra,* 239 *N.J.Super.* 601, 571 *A.*2d 1349 (injuries stemming from plaintiff's wanton and willful misconduct and defendant's medical malpractice can be apportioned). Accordingly, we conclude that the jury verdict, apportioning one-hundred percent of the fault between Plantation and plaintiff, was incomplete because it ignored the fault of parties that obviously shared the blame for plaintiff's injuries. A complete verdict should apportion each party's relative responsibility for the compensatory damages of $150,000, including the relative fault of the settling intentional tortfeasors.

We note the observations and alternative approach of the dissenting opinion in the Appellate Division. That opinion opposes a comparison of fault between the negligent defendant and the intentional tortfeasors, not because of any conceptual obstacle but because the dissent anticipates that plaintiffs would be disadvantaged if fault were substantially allocated to intentional wrongdoers who were not financially able to satisfy the judgment. Under the Act as it existed at the time of the instant action, that concern was irrelevant because plaintiffs were assured full recovery from any single tortfeasor through the doctrine of joint and several liability. However, pursuant to the amended statute, a joint tortfeasor is jointly and severally liable only if found greater than sixty percent at fault. *N.J.S.A.* 2A:15–5.3(a). Thus, in a comparable case covered by the amended statute, if more than forty percent of the fault is allocated to the intentional tortfeasors, a plaintiff's recovery could be significantly limited if the intentional tortfeasors are then unable to pay the judgment. Accordingly, the dissent proposes no apportionment between the negligent and intentional tortfeasors in such cases, instead imposing the primary burden of payment on the negligent defendant with a right of indemnity against the intentional tortfeasors. We reject that analysis because it ignores the principle that the parties causing an injury should be liable in proportion to their relative fault. Consequently, we decline to adopt an exception to our common-law indemnity rule that would allow Plantation to escape all liability by requiring the intentional tortfeasors to bear ultimate responsibility for Plantation's negligence. *See Cartel Capital Corp. v. Fireco of N.J., supra,* 81 *N.J.* at 565–66, 410 *A.*2d 674.

Nor do we perceive that our decision in *Butler v. Acme Markets, Inc., supra,* 89 *N.J.* 270, 445 *A.*2d 1141, which permits the imposition of liability on a commercial-property owner whose negligence facilitated the commission of a criminal assault on a patron, will be undermined by assessing damages in proportion to fault in the circumstances of this case. The dissenting opinion below implies that to permit apportionment

between Plantation and the intentional tortfeasors in effect would dilute Plantation's duty to prevent violent confrontations in its parking lot. That reasoning finds support in a line of cases decided by this Court in which we have precluded defendants from relying on a plaintiff's negligence to offset the defendant's duty, under circumstances in which the defendant's duty encompassed the obligation to prevent the plaintiff's allegedly-inappropriate conduct. *Cf. Cowan v. Doering*, 111 *N.J.* 451, 458–67, 545 *A.*2d 159 (1988) (hospital could not assert contributory negligence as defense when its duty included exercise of reasonable care to prevent plaintiff from engaging in self-damaging conduct); *Suter, supra*, 81 *N.J.* at 165–68, 406 *A.*2d 140 (comparative negligence not available as defense in products-liability case when factory worker sustains injury while using unsafe machine for its intended purpose); *Soronen v. Olde Milford Inn, Inc.*, 46 *N.J.* 582, 589–92, 218 *A.*2d 630 (1966) (contributory negligence not available as defense to tavern keeper who negligently sells alcoholic beverages to visibly-intoxicated customer, proximately contributing to resulting injury). In each of those cases we recognized that the inappropriate imposition of a comparative-negligence defense could "lead to the dilution or diminution of a duty of care." *Cowan v. Doering, supra*, 111 *N.J.* at 467, 545 *A.*2d 159. We recognize that the reasoning underlying those decisions could appropriately be applied to preclude apportionment of fault between two tortfeasors when the duty of one encompassed the obligation to prevent the specific misconduct of the other. *Cf. Butler v. Acme Markets, supra*, 89 *N.J.* 270, 445 *A.*2d 1141 (proprietor with knowledge of repeated criminal attacks on patrons was negligent in failing to take action to prevent similar attack on plaintiff).

On this record, however, we are unable to agree that that legal principle should be applied in this case. We understand the jury to have determined that plaintiff's injury was caused by the combination of the intentional tortfeasors' assaultive conduct, plaintiff's negligence in apparently provoking the as-

sault, and Plantation's failure to have provided adequate light-
ing and security in the parking lot. Based on the record before
us, it would be highly speculative to conclude that the causal
connection between Plantation's alleged negligence and the
combined misconduct of plaintiff and the individual defendants
was sufficient to invoke the rationale of *Cowan, Suter,* and
*Soronen.* Our view is that the events that allegedly took place
in the parking lot neither were sufficiently foreseeable nor bore
an adequate causal relationship to Plantation's alleged fault to
justify the imposition on Plantation of the entire responsibility
for the resultant injury. In this case we adhere to the general
principle that liability should be imposed in proportion to fault.

In conclusion, we hold that the Comparative Negligence Act
applies to conduct characterized as intentional. We remand the
matter to the Law Division for a new trial on the issue of
liability only. In that proceeding the jury shall determine the
relative percentages of fault of plaintiff, Plantation, and the
intentional tortfeasors, the latter as a group. The trial court
should mold the verdict to reflect the percentages of fault so
assigned.

The judgment of the Appellate Division is affirmed in part
and reversed in part and the matter remanded for further
proceedings consistent with this opinion.

*For affirmance in part; for reversal in part;*
*remandment.*

Chief Justice WILENTZ and Justices CLIFFORD,
HANDLER, O'HERN, GARIBALDI and STEIN—6.

*Opposed* —None.