**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5672-18T3

JOSEPH V. BUCCHI,

     Plaintiff-Appellant,

and

BEN CASSARA,

     Plaintiff,

v.

JANEL DELUCA and
JOAN E. STROTHERS,

     Defendants-Respondents.

_____

Argued October 6, 2020 – Decided October 29, 2020

Before Judges Yannotti and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Docket No. L-0464-17.

Kenneth S. Thyne argued the cause for appellant (Roper & Thyne, LLC, attorneys; Kenneth S. Thyne, of counsel and on the briefs; Angela M. Roper, on the briefs).

John P. Gilfillan argued the cause for respondent Janel DeLuca (Kennedys CMK LLP, attorneys; John P. Gilfillan, of counsel and on the brief; Michael C. Shapiro, on the brief).

Harry D. Norton, Jr., argued the cause for respondent Joan E. Strothers (Norton, Murphy, Sheehy & Corrubia, PC, attorneys; Harry D. Norton, Jr., of counsel and on the brief; Jessica J. Centauro-Petrassi, on the brief).

PER CURIAM

Plaintiff Joseph V. Bucchi appeals from an order entered by the Law Division on February 19, 2019, which granted summary judgment in favor of defendant Joan E. Strothers.[1] We affirm in part, reverse in part, and remand for further proceedings.

I.

We briefly summarize the relevant facts and procedural history. On February 11, 2016, plaintiff was driving on McBride Avenue in Woodland Park. He was taking his dog to an appointment at a pet-care shop on Paterson Avenue in Little Falls. Plaintiff was stopped at a red light, adjacent to a gas station, when he observed defendant Janel DeLuca's vehicle waiting to exit the gas

---

[1] As explained herein, Ben Cassara also was a plaintiff in this case, but he is not a party to this appeal. Therefore, in this opinion, "plaintiff" refers to Bucchi.

station. According to plaintiff, DeLuca was holding a cell phone to her ear and waving with her free hand.

DeLuca began driving forward into the road with the cell phone in her hand. According to DeLuca, plaintiff began to scream at her and he positioned his car so that she could not leave the gas station. DeLuca claimed plaintiff exited his car and approached the driver's side of her vehicle. She stated that plaintiff was yelling at her about using the cell phone while driving.

Plaintiff returned to his car as the traffic light turned green and both parties drove away. When he arrived at the pet-care shop on Paterson Avenue in Little Falls, plaintiff parked and exited his car. He was attempting to put a harness on his dog when he noticed DeLuca's car approaching. DeLuca stopped her car by the shoulder of the road. Plaintiff claimed DeLuca placed her hand through the window of her car, took a photo of his license plate, and stated, "I got you now."

Plaintiff approached DeLuca's vehicle. He said DeLuca was shouting obscenities at him. He stated that he placed his hand on the passenger side of DeLuca's car "to assure his balance." Plaintiff claimed that, as DeLuca began to drive away, his hand became caught on the door handle of her car and he had to run alongside the car as it gathered speed. Plaintiff asserted that he pleaded

with DeLuca to stop as he struggled to free his hand. DeLuca continued to drive away, and plaintiff became unsteady and fell.

Drew Thomas testified that on February 11, 2016, he observed plaintiff and DeLuca arguing at the gas station in Woodland Park. Thomas then drove to Little Falls, where he noticed DeLuca's vehicle had pulled over to the side of the road. He saw plaintiff lying on the ground. Thomas did not know why plaintiff was on the ground, but he noticed that plaintiff's face was bloody.

Thomas pulled over, got out of his car, and ran over to plaintiff. Plaintiff was not coherent. Thomas said plaintiff was "clearly shaken" and blood was coming from his face. Thomas told plaintiff to stay down but he did not listen and attempted to stand up. According to Thomas, plaintiff was "wobbling into the street."

Thomas stated that in "like in a split second," a car came down the street and "it looked like [plaintiff] just dove right into it and got hit pretty hard." Defendant Strothers was driving the car. After she heard the impact, she stopped and exited her vehicle. Thomas stated that after the second accident, plaintiff was "pretty badly injured[.]" He believed plaintiff was conscious but bloodier than he had been before.

Fabio Stratface testified that on the date of the accidents, he was driving along Paterson Avenue in Little Falls heading toward Woodland Park, when he noticed a car stopped on the side of the road. A man was standing on the passenger side of the car exchanging words with the driver. Stratface said the vehicle started to pull away at a normal speed, and the man was "just running beside the car." Stratface then observed the plaintiff fall and stated that he thought the man "tripped and knocked himself out." He said the man fell "face first" and blood was coming from his forehead.

Stratface pulled over and stopped. He called the police and reported that a man was unconscious on the side of the road, and then he remained at the scene. He testified that he did not know how long the man had been "knocked out." Stratface said the man "came to" and then "stumbled into the road" where "the other car hit him." He stated that following the collision the man was in the middle of the road "face up, not moving." He thought the man was unconscious, but he was not sure.

Jose Sol testified that on February 11, 2016, he was riding in the car with Stratface. He said that when they turned onto Paterson Avenue, he saw a man standing on the passenger side of another car. Sol stated that from where he was it looked like the man was holding on to the car or possibly "stuck in the door."

5

Sol said that it appeared as though the man was chasing the car as it was moving slowly away. According to Sol, the man took about fifteen steps and then fell and hit his head.

Sol further testified that Stratface pulled his car over and called the police. Sol said the man was just "laying there" and he thought he was unconscious. Sol stated that the man was on the ground for about two to three minutes before he started "coming to." The man then attempted to stand up, and Sol and Stratface went over to see if he was "all right." The man was stumbling and falling over. They tried to have him sit down, but "he ended up wobbling into the street, and that's when the other car struck him." Sol said that after the car struck the man, he saw more blood coming from the man's head.

In addition to the witness statements, both accidents were recorded by a surveillance camera at a nearby business. A compact disc with the video footage was submitted to the trial court. The first video shows plaintiff quickly approaching a white car on the side of the road. He begins running alongside the car as it starts to pull away. The view is partially obscured by a parked vehicle. Plaintiff is then seen on the ground, facing down. Only his head is visible. The second video shows plaintiff getting up and walking or stumbling

6

into the path of an oncoming car. Again, the view is partially obscured by the parked car. The video only shows the impact with the car.

Plaintiff testified that he had no recollection of what happened after the first accident. When the police arrived on the scene, they described plaintiff as lying in the street "awake but unresponsive to verbal cues." Plaintiff was transported to a hospital, where it was determined that he had suffered a fractured left wrist, facial fractures, and traumatic brain injury.

Plaintiff thereafter filed a complaint against DeLuca and Strothers. In count one, plaintiff alleged he was injured due to defendants' negligence. He asserted in count two a claim of battery against DeLuca, alleging that she used her automobile to intentionally injure him. In count three, Cassara, plaintiff's spouse, asserted a per quod claim, alleging that as result of defendants' negligence, he was denied plaintiff's services, society, and consortium.

In discovery, plaintiff provided expert reports from Dr. John T. Nasr, a neurologist; Dr. Peter DeNoble, an orthopedist; and Dr. Traian A. Zisu, a psychiatrist. Thereafter, DeLuca and Strothers filed motions for summary judgment, which plaintiff opposed.

The judge heard oral argument and entered an order dated November 30, 2018, granting DeLuca's motion for summary judgment on count two and

denying her motion for summary judgment on counts one and three. The judge also entered an order dated January 4, 2019, denying Strothers' motion.

The judge found that plaintiff had presented sufficient evidence to support his claim that Strothers was negligent in the operation of her car. In addition, the judge rejected Strothers' contention that summary judgment should be granted in her favor because plaintiff's experts did not specifically allocate any of plaintiff's injuries to the second accident. The judge determined that defendants had the burden of apportioning plaintiff's injuries between the two accidents. The judge stated that since plaintiff's damages could not be allocated by expert testimony, the jury must determine the percentages of fault of each defendant and then assess the amount of compensation to be awarded. The court would then mold the verdict "accordingly."

Strothers then filed a motion for reconsideration arguing that the judge had not evaluated all of the case law cited in making his initial decision. The judge heard oral argument on the motion and placed his decision on the record. The judge said he erred by previously shifting the burden of allocating responsibility for plaintiff's injuries to defendants. The judge found that plaintiff had the burden of proof on the issue of damages and plaintiff failed to present sufficient evidence allocating any of his injuries to the second accident.

A-5672-18T3

The judge entered the order dated February 19, 2019, granting Strothers' motion for summary judgment. Plaintiff filed a motion for leave to appeal from that order. We denied the motion.

Thereafter, the claims against DeLuca were tried before a jury, which found plaintiff and DeLuca both were negligent and allocated sixty percent of the responsibility for the first accident to plaintiff. The judge filed an order dated June 27, 2019, entering judgment for DeLuca. Plaintiff then filed a motion for a new trial. The judge entered an order dated August 20, 2019, denying the motion. This appeal followed.

## II.

On appeal, plaintiff argues that when an individual is injured in successive accidents, which occur close in time, the burden shifts to the alleged tortfeasors to apportion responsibility for the injuries between the accidents. Plaintiff contends the motion judge erred by imposing the burden of apportionment upon him, and by granting summary judgment to Strothers because plaintiff's experts did not allocate some portion of his injuries to the second accident. He therefore argues the order granting summary judgment to Strothers should be reversed and the matter remanded for trial against both defendants.

A-5672-18T3

Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). The motion judge must consider whether "the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational fact-finder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of America, 142 N.J. 520, 540 (1995). On appeal, we review the trial court's order in light of the standard for summary judgment in Rule 4:46-2(c). Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016).

For the plaintiff to prevail on a claim of negligence, the plaintiff must establish "(1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages." Townsend v. Pierre, 221 N.J. 36, 51 (2015) (quoting Polzo v. Cnty. of Essex, 196 N.J. 569, 584 (2008)). The plaintiff must establish each factor by "competent proof." Ibid.

Generally, "the burden of proof that the tortious conduct of the defendant has caused the harm to the plaintiff is upon the plaintiff." Reichert v. Vegholm, 366 N.J. Super. 209, 214 (App. Div. 2004). "Sometimes, however, the burden

of proof to apportion damages is shifted from plaintiff to defendant." Ibid. We have previously shifted that burden to the defendants when they are in a superior position to allocate the damages, when the plaintiff is free of fault, or when the plaintiff suffered a unitary injury at the hands of multiple defendants. Id. at 214-223 (citations omitted).

Here, the motion judge correctly determined that the burden of apportionment of damages should not be shifted to defendants because he was not entirely without fault in either accident. As the judge noted, the record shows plaintiff charged DeLuca's car and held onto it as she tried to drive away. He fell and, according to the witnesses, was unconscious for a brief time. He then stood up and stumbled into the street, where he was struck by Strothers' oncoming vehicle. It is clear, therefore, that plaintiff had some fault in both accidents.

The judge also correctly found defendants were not more knowledgeable or in a better position than plaintiff to apportion the damages between the two accidents. As we noted in Reichert, the burden of apportionment has been shifted to defendants when they have more expertise or are better able to obtain access to relevant apportionment proofs. 366 N.J. Super. at 217 (citations omitted). That is not the case here.

A-5672-18T3

However, we are convinced plaintiff presented sufficient evidence to show that he suffered a unitary harm caused by alleged concurrent wrongs of the two defendants. A unitary harm is an indivisible injury where "the only method of apportioning damages is through the acts or inactions of the defendants who caused the unitary harm or injury." Reichert, 366 N.J. Super. at 221. See also Feldman v. Lederle Labs., 257 N.J. Super. 13, 174 (App. Div. 1992).

Here, plaintiff furnished three expert reports. In his report, Dr. DeNoble addressed plaintiff's left-wrist fracture, stating that plaintiff "had been involved in an accident, where he was a pedestrian struck and dragged [fifty] feet by a car on February 11, 2006." Dr. DeNoble did not, however, mention the second accident in his report. His report essentially indicates that the first accident was the cause of plaintiff's wrist injury.

Dr. Nasr addressed plaintiff's head injuries in his report. He noted that plaintiff had reported he had been involved in a "pedestrian versus vehicle accident . . . ." The doctor stated that plaintiff "reported an aggressive driver struck him and dragged him to the ground causing him to develop retrograde amnesia. He was then witnessed to try to walk away and was hit by another incoming vehicle."

Dr. Nasr noted that, after the accidents, plaintiff had been hospitalized and found to have suffered "acute right temporal hemorrhagic contusions, subdural hematoma, and bilateral skull fractures." On the issue of causation, Dr. Nasr wrote that plaintiff had been "hit by a car" and his injuries were caused by the previously described "accident."

Furthermore, in his report, Dr. Zisu addressed plaintiff's psychological injuries. The doctor stated that plaintiff suffered "a significant head injury" during the pedestrian-vehicle accident, including "acute right temporal hemorrhagic contusions, subdural hematoma, and bilateral fractures."

Dr. Zisu wrote that plaintiff had been unconscious for five to eight minutes and "basically amnestic to the event." The doctor opined that plaintiff suffered from major depressive disorder due to the physiologic changes resulting from the traumatic brain injury suffered during the "accident."

Thus, plaintiff presented no expert testimony attributing his wrist injury to the accident with Strothers' car. However, he presented sufficient evidence to support the conclusion that the injuries he sustained to his head, and the psychological injuries related to the head injuries, were so "entwined that they were incapable of apportionment" between the first and second accidents. Reichert, 366 N.J. Super. at 223-25.

A-5672-18T3

We note that in Hill v. Macomber, two vehicles were involved in a collision leaving the occupants of both vehicles injured. 103 N.J. Super. 127, 131-32 (App. Div. 1968). Shortly thereafter, a third vehicle struck the plaintiff's disabled car further injuring the occupants. Id. at 132. At trial, the occupants of the disabled vehicle were not able to allocate the injuries between the two accidents. Id. at 134.

In addition, the medical experts did not allocate the injuries to the first or second collision. Ibid. We held that "where there are collisions in rapid succession producing a single end result, and no proof as to what damage was separately caused by each collision," both tortfeasors are jointly and severally responsible. Id. at 136-37.

Similarly, in Campione v. Soden, the plaintiff was involved in successive auto accidents, which resulted in injuries to his legs, back, neck, teeth, and related psychological injuries. 150 N.J. 163, 170 (1997). Although the injuries to the plaintiff's legs could be allocated to the second impact, the source of the other injuries were "vigorously contested." Ibid. The experts opined that the injuries could have been caused by either of the impacts individually or by a combination of both. Ibid. The jury returned a verdict allocating responsibility between the two accidents. Id. at 171.

14

In Campione, the Supreme Court observed that in 1987, the Legislature had enacted the Comparative Negligence Act (Act), N.J.S.A. 2A:15-5.1 to -5.3, "to ameliorate the harsh results attendant to the common-law doctrine of contributory negligence." Id. at 174. The Court observed that the "doctrine foreclosed recovery for any plaintiff found even marginally responsible for his or her injuries." Ibid. (citing Blazovic v. Andrich, 124 N.J. 90, 97 (1991)). However, rather than using this all or nothing approach, the Act "permits apportionment of liability relative to fault." Ibid. (citing Blazovic, 124 N.J. at 97).

The Court noted that under the Act, the extent of each party's negligence is decided by the finder of fact, in the form of a percentage. Ibid. (citing N.J.S.A. 2A:15-5.2(b)). Moreover, the Legislature had amended the Act to modify joint and several liability, and provided that only a defendant who was determined to be sixty percent or more responsible for the damage could be liable for the entire award. Id. at 175 (citing N.J.S.A. 2A:15-5.3(a)).

The Campione Court held that in view of the Act and the changes to joint and several liability, Hill was no longer precedent for imposing joint and several liability for unallocated damages resulting from successive accidents. Id. at 184. The Court reasoned that although the Act did not specifically address liability

for injuries in successive accidents, the purpose of the Act would be advanced "by requiring juries to apportion damages between the successive accidents and to apportion fault among the parties responsible for each accident." Ibid.

The Court stated that "[a]t the conclusion of a trial where allocation of damages among multiple tortfeasors is an issue, the trial court is to determine, as a matter of law, whether the jury is capable of apportioning damages." Ibid. (citation omitted). Conclusive evidence concerning the allocation of damages is not necessary, although it will "result in a less precise allocation than that afforded by a clearer record." Ibid. (citation omitted).

"If the court establishes as a matter of law that a jury would be incapable of apportioning damages, the court is to apportion damages equally among the various causative events." Id. at 184-85 (citations omitted). "If the court concludes that the jury would be capable of apportioning damages, the jury should be instructed to do so." Id. at 185.

Here, the motion judge correctly granted Strothers' motion for summary judgment regarding plaintiff's injuries to his wrist but erred by granting summary judgment on the claims against Strothers for the injuries to his head and the related psychological injuries. As we stated previously, plaintiff presented sufficient evidence to support the conclusion that he sustained a

16

unitary harm in the successive accidents, and that his head and related psychological injuries were not capable of apportionment. Strothers failed to carry her burden of showing, as a matter of law, that none of these injuries could be allocated to the second accident.

We therefore remand the matter for trial on plaintiff's claims against Strothers for the injuries to his head and the related psychological injuries. At trial, the jury will be required to determine whether Strothers was negligent and whether any such negligence was a proximate cause of plaintiff's head and psychological injuries.

The jury also will be required to determine whether plaintiff was negligent and whether his negligence was a proximate case of his head and psychological injuries. If the jury finds that Strothers was not negligent, or that plaintiff's percentage of responsibility for his injuries was more than fifty-one percent, judgment shall be entered for Strothers. See N.J.S.A. 2A:15-5.1.

However, if the jury finds that Strothers was negligent and plaintiff's negligence was equal to or less than that of Strothers, the judge then must determine, as a matter of law, whether the jury is capable of apportioning plaintiff's head and psychological injuries between the first and second accidents. Campione, 150 N.J. at 184. If so, the jury shall be instructed to make

that determination.  Ibid.  If the judge finds, as a matter of law, that the jury is not capable of apportioning damages, the judge must apportion plaintiff's damages "equally among the various causative events."  Id. at 184-85 (citations omitted).  Based on the evidence presented, the judge shall determine the percentage, if any, of plaintiff's head and related psychological injuries should be allocated to Strothers.

III.

Plaintiff argues that if the order granting summary judgment in favor of Strothers is reversed, the court should order a new trial against both Strothers and DeLuca.  We disagree.

As we have explained, the claims against DeLuca were tried before a jury, after which the court entered a judgment dated June 27, 2019, in favor of DeLuca.  Plaintiffs filed a motion for a new trial, which the court denied in an order dated August 20, 2019.

In his notice of appeal, plaintiff stated he was appealing from the trial court's order of February 19, 2019, which granted Strothers' motion for summary judgment.  In the notice of appeal, plaintiff stated he was "not appealing the jury verdict or the denial of [his] motion for a new trial."  Moreover, in his brief on

this appeal, plaintiff stated that he was not challenging the jury's verdict or any evidentiary ruling during the trial.

However, in seeking a new trial against both Strothers and DeLuca, plaintiff is essentially seeking reversal of the June 27, 2019 judgment entered for DeLuca and the order of August 20, 2019, denying his motion for a new trial. We are convinced that plaintiff may not seek such relief on appeal where, as here, he has appealed only from the order denying Strothers' motion for summary judgment and expressly excluded any appeal of the judgment dated June 27, 2019, and the order of August 20, 2019.

Our court rules provide that "[i]n civil actions the notice of appeal . . . shall designate the judgment, decision, action or rule or part thereof appealed from . . . ." R. 2:5-1(e)(3)(i). Thus "only the judgment or orders designated in the notice of appeal . . . are subject to the appeal process and review," and the defendant has no right to consideration of issues that are not included in the notice of appeal. 1266 Apartment Corp. v. New Horizon Deli, Inc., 368 N.J. Super. 456, 459 (App. Div. 2004) (citing Sikes v. Township of Rockaway, 269 N.J. Super. 463, 465-66 (App. Div.), aff'd o.b., 138 N.J. 41 (1994)).

Plaintiff argues a notice of appeal from a final judgment includes within its scope all interlocutory orders entered in the action. However, plaintiff has

not appealed from the final judgment. He has appealed only from the order of February 19, 2019. Therefore, his appeal is limited to the February 19, 2019 order and does not encompass the trial court's orders of June 27, 2019, and August 20, 2019.

Furthermore, in his brief on this appeal, plaintiff has not raised any argument challenging the jury's verdict or the denial of his motion for a new trial on the claims against DeLuca. Therefore, plaintiff is deemed to have waived any argument in support of reversal of the trial court's orders of June 27, 2019, and August 20, 2019. New Jersey Dept. of Environmental Protection v. Alloway Twp., 438 N.J. Super. 501, 505 n.2 (App. Div. 2015) ("An issue that is not briefed is deemed waived upon appeal.").

Therefore, the final judgment entered for DeLuca stands. The trial on remand will be solely for the purpose of determining what liability, if any, Strothers has for plaintiff's head and related psychological injuries that he sustained in the second accident.

Affirmed in part, reversed in part, and remanded for further proceedings in accordance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5672-18T3