845 A.2d 1287 (2004)
368 N.J. Super. 348
Jeanna WALDRON, Plaintiff-Appellant,
v.
Terrane A. JOHNSON, Defendant,
Monmouth Mall, Equity Group, Defendant-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued November 12, 2003.
Decided April 23, 2004.
Bruce P. Fromer, Ocean, argued the cause for appellant (Nelson and Fromer, attorneys; Charles M. Crocco, on the brief).
Barry J. Gainey, Hoboken, argued the cause for respondent (Gainey and McKenna, attorneys; Mr. Gainey, on the brief).
Before Judges PRESSLER,[1] PARKER and R.B. COLEMAN.
*1288 The opinion of the court was delivered by R.B. COLEMAN, J.A.D.
In this civil action arising out of a physical assault at a mall, the jury returned a unanimous verdict in favor of plaintiff Jeanna Waldron in the amount of $25,000, apportioning sixty percent against her assailant, defendant Terrane A. Johnson and forty percent against defendant Monmouth Mall.[2] Plaintiff was found not to have been at fault. Plaintiff appeals, however, from orders denying her request that the court mold the apportioned jury verdict to a judgment providing for joint and several liability. In effect, she sought to require the Mall to pay the entire damage award. She also appeals from the court's refusal to calculate prejudgment interest using the two percent enhanced rate applicable to judgments that exceed the monetary limit of the Special Civil Part at the time of entry, as specified in R. 4:42-11(a)(iii) and R. 4:42-11(b). We affirm the denial of plaintiff's application for joint and several liability. We reverse the portions of the orders calculating prejudgment interest and remand for a corrected judgment.
The assault occurred on March 6, 1997. Plaintiff was standing in line with her son at an ATM machine in the Monmouth Mall. Defendant Johnson, who was behind her, became impatient and tried to cut in front of plaintiff. The two got into an argument which resulted in Johnson grabbing plaintiff by the arm, pushing her and eventually knocking her to the ground. When plaintiff was on the ground, Johnson continued to punch her and slam her head against the floor. Although the duration of this altercation was disputed, Mall security officers were slow to respond. A passerby intervened and stopped the assault. Plaintiff was taken to the Monmouth Medical Center, where she was treated and subsequently underwent two surgeries.

I.
Plaintiff contends the Mall's failure to provide adequate security to prevent the assault brings this case within an exception that should preclude apportionment of fault. See, e.g., Blazovic v. Andrich, 124 N.J. 90, 111, 590 A.2d 222 (1991) and Martin v. Prime Hospitality Corp., 345 N.J.Super. 278, 286-87, 785 A.2d 16 (App.Div.2001). She, therefore, argues this case should be treated as an exception to the provision of the New Jersey Comparative Negligence Act, which declares that a joint tortfeasor is only jointly and severally liable for an entire verdict when that tortfeasor is adjudicated sixty percent or more at fault for the injury. N.J.S.A. 2A:15-5.3a. Neither Blazovic nor Martin supports the result urged by plaintiff. Although Blazovic and Martin both recognized that there may be certain instances where a breach of a duty to prevent specific misconduct of another may preclude apportionment of fault, both cases expressly rejected, as a matter of law, the applicability of such an exception under circumstances comparable to those presented in this case.
In Blazovic, plaintiff became involved in a verbal dispute with five individuals that escalated into a physical altercation in the parking lot of a restaurant. Blazovic, supra, 124 N.J. at 93, 590 A.2d 222. Plaintiff settled with the individual tortfeasors and the trial judge declined to allow the jury to compare their intentional conduct with the allegedly negligent conduct of plaintiff and the restaurant. Id. at 94, 590 A.2d 222. Thus, the jury solely apportioned fault between *1289 plaintiff for instigating the altercation and the restaurant for not having sufficient lighting and security in the parking lot. Ibid. The trial court then molded the verdict, reducing the recovery to reflect plaintiff's thirty percent fault and dividing the balance on a pro rata basis between the restaurant and four of the individual assailants. Id. at 94-95, 590 A.2d 222.
On appeal, we modified that judgment. Id. at 95, 590 A.2d 222. Thereafter, the Supreme Court agreed with our holding that the jury verdict was incomplete because of its failure to take into consideration the fault of the intentional tortfeasors. The Court stated "we reject the concept that intentional conduct is `different in kind' from both negligence and wanton and willful conduct, and consequently cannot be compared with them. [Indeed], we view intentional wrongdoing as `different in degree' from either negligence or wanton and willful conduct." Blazovic v. Andrich, supra, 124 N.J. at 107, 590 A.2d 222. The Court continued:
Thus, consistent with the evolution of comparative negligence and joint-tortfeasor liability in this state, we hold that responsibility for a plaintiff's claimed injury is to be apportioned according to each party's relative degree of fault, including the fault attributable to an intentional tortfeasor.
[Ibid.]
Based on the record in Blazovic, the Supreme Court reasoned that the incident was neither sufficiently foreseeable nor was the causal relationship adequately connected to the plaintiff's negligence to justify imposing the entire liability on the restaurant. Id. at 112, 590 A.2d 222.
In Martin, plaintiff, who was sexually assaulted in the defendant's hotel, sued her assailant and the hotel; the hotel then filed a cross-claim against the assailant. Martin v. Prime Hospitality Corporation, supra, 345 N.J.Super. at 280, 785 A.2d 16. The assailant defaulted, and the trial court submitted the case to the jury solely on the issue of whether the hotel was negligent in failing to provide sufficient security for the safety of the defendant. Id. at 284, 785 A.2d 16. We reversed, holding that the hotel's duty of care did not encompass an obligation to prevent the sexual assault. Id. at 292, 785 A.2d 16. We emphasized that under current law "when a plaintiff claims injury from an intentional tort caused by negligent security or supervision, the jury must apportion fault between the negligent and intentional tortfeasors." Id. at 286, 785 A.2d 16. We noted further that the sexual assault was neither sufficiently foreseeable nor sufficiently related to the hotel's alleged fault to justify imposing responsibility for all of the plaintiff's injuries.
Likewise in this case, Johnson's attack upon the plaintiff was not so foreseeable nor did it bear such a close causal connection to the Mall's slow response to the melee that it should justify imposing upon the Mall the entire responsibility for plaintiff's injuries. See Clohesy v. Food Circus Supermkts., 149 N.J. 496, 502-03, 694 A.2d 1017 (1997) (explaining the distinction between foreseeability as it affects duty and as it affects proximate causation). A business such as a mall cannot reasonably be expected to prevent every assault. Here, the record does not disclose a single incident at the ATM before the subject altercation, which might have elevated the general duty of the Mall to provide security to a specific duty geared to that precise location. The Mall had no actual notice that the particular assault was impending. The argument between plaintiff and Johnson began when plaintiff stood her ground, refusing to permit Johnson to use the ATM machine ahead of her. Through her expert's testimony, plaintiff established to the jury's satisfaction that the *1290 Mall's response time was slow and that, overall, its security was lax or deficient; but plaintiff's injury was no more foreseeable or causally connected to defendant's negligence in those respects than was the case in either Blazovic or Martin. Inasmuch as the Mall's duty did not encompass the obligation to prevent the assault on plaintiff, the trial court properly refused to shift to it full responsibility for plaintiff's injuries.
As noted above, the relief sought by plaintiff is actually in direct contravention of the New Jersey Comparative Negligence Act, N.J.S.A. 2A:15-5.1 to -5.8. For example, N.J.S.A. 2A:15-5.3 provides in pertinent part:
[T]he party so recovering [damages] may recover ...
(a) [t]he full amount of the damages from any party determined by the trier of fact to be 60% or more responsible for the total damages [however] ...
(c) [o]nly that percentage of the damages directly attributable to that party's negligence or fault from any party determined by the trier of fact to be less than 60% responsible for the total damages.
Plaintiff is authorized by statute to recover the full amount of damages from defendant Johnson. By contrast, the statute expressly limits her right of recovery from the Mall to the percentage of fault determined by the trier of fact.

II.
Following the trial, the court resolved the disagreements over the form of order by entering two separate consent orders of judgment: one in the amount of $10,000 plus prejudgment interest against the Mall, for a total of $12,183.15; and the second in the amount of $15,000 plus prejudgment interest against defendant Johnson, for a total of $17,949.73.[3] As a result of such bifurcation of the damages into two separate judgments, the amount of each was at or below the monetary limit of the Special Civil Part at the time of entry ($15,000) and, hence, was held not eligible for the additional two percent rate specified in R. 4:42-11(a)(iii), which is incorporated into paragraph (b) relating to prejudgment interest.[4] It obviously makes a difference whether interest is calculated on the full $25,000 damage award or on the damage award attributable to each defendant after apportionment, as reflected in the two separate consent orders entered by the trial judge.
First, there should be one judgment, where practicable. Indeed, R. 4:42-1(a)(4) directs that a judgment shall include "a separate numbered paragraph for each separate substantive provision of the judgment or order[.]" Consistent with that direction to include various and even differing aspects of a comprehensive ruling in a single order, subparagraph (5) of the rule directs that the effective date of each provision must be stated, if different from the date of entry.
Second, by the literal language of R. 4:42-11(a)(iii), the rate at which interest is to be calculated is to be applied to the judgment, not to portions or segments of *1291 the judgment. That portion of the rule prescribing the manner of calculation of post-judgment interest states "[f]or judgments exceeding the monetary limit of the Special Civil Part at the time of entry ... at the rate provided in subparagraph (a)(ii) plus 2% per annum." Prejudgment interest in tort actions is "calculated in the same amount and manner provided for by paragraph (a)" subject to exceptions for public entities and employees or exceptional cases where prejudgment interest may be suspended, neither of which is applicable to this case.
We recognize that the trial judge must exercise sound discretion in the molding of the verdict. For example, in Young v. Latta, 233 N.J.Super. 520, 526, 559 A.2d 465 (App.Div.1989), aff'd, 123 N.J. 584, 589 A.2d 1020 (1991), we noted that the liability of each defendant for prejudgment interest is dependent on the date on which he was joined as a party. We have also held that prejudgment interest payable by a hospital is calculated on the basis of the limits fixed by the hospital immunity statute, rather than on the entire jury verdict.[5]See Marsella v. Monmouth Medical Center, 224 N.J.Super. 336, 340, 540 A.2d 865 (App.Div.1988). In addition, R. 4:42-11, itself, requires that for each year of accrual, the rate of interest must be ascertained by reference to the average rate of return for the preceding year on State accounts. Nevertheless, under the facts of this case, we hold that the prejudgment interest should be calculated on the full $25,000 damage award at rates that include the additional two percent specified by R. 4:42-11(a)(iii). After that calculation is made, the court should allocate the appropriate share to each defendant according to that defendant's determined percentage of fault.
We think it plain that the enhanced rate is intended to produce a more commercially reasonable rate. See Pressler, Current New Jersey Court Rules, comment 1 on R. 4:42-11 (2004). It is also intended to serve the two policy reasons for allowing prejudgment interest in tort actions, except in "exceptional cases." Those policy reasons are (1) to compensate the plaintiff for the loss of income that would have been earned on the judgment had it been paid earlier and (2) to induce prompt defense considerations of settlement possibilities. Ruff v. Weintraub, 105 N.J. 233, 244-45, 519 A.2d 1384 (1987). Those policy reasons are not well served by calculating the prejudgment interest on the bifurcated judgments.
We remand the matter to the trial court for a recalculation of prejudgment interest in accordance with this opinion. In all other respects, the orders from which plaintiff appeals are affirmed.
NOTES
[1] Judge Pressler did not participate in oral argument, but has, with the consent of counsel, been added to the panel deciding the matter.
[2] Defendant Terrane Johnson did not participate in the trial. According to the trial judge, she was served on December 2, 1998 and a request for entry of default was docketed on February 25, 1999. No judgment by default was sought until the time of trial.
[3] Plaintiff's counsel consented as to form only.
[4] R. 4:42-11(a)(iii) prescribes the manner of calculating post-judgment interest in part as follows: "For judgments exceeding the monetary limit of the Special Civil Part at the time of entry: in the manner provided for in subparagraph (a)(ii) of this Rule until September 1, 1996; thereafter, at the rate provided in subparagraph (a)(ii) plus 2% per annum." Subpart (b) provides in part "Prejudgment interest shall be calculated in the same amount and manner provided for by paragraph (a) of this rule except that for all periods prior to January 1, 1988 interest shall be calculated at 12% per annum. The contingent fee of an attorney shall not be computed on the interest so included in the judgment."
[5] That circumstance is clearly distinguishable from a situation in which no such immunity had been granted by statute.