**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0354-20

MICHON CHAMBON,

      Plaintiff-Respondent,

v.

ROBERT CHAMBON,

      Defendant-Appellant.

_____

Argued February 3, 2022 – Decided February 17, 2022

Before Judges Haas and Mawla.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Somerset County, Docket No. FM-18-0170-09.

Lisa C. Krenkel argued the cause for appellant (Krenkel & Krenkel, LLC, attorneys; Lisa C. Krenkel, on the briefs).

Steven J. Kossup argued the cause for respondent.

PER CURIAM

    Defendant Robert Chambon appeals from four post-judgment orders: a

March 27, 2020 order holding him in violation of litigant's rights; a July 17,

2020 order denying reconsideration of the March order; a September 11, 2020 order; and an amended order dated September 14, 2020, also denying reconsideration and relief from the March order. We affirm in part and remand in part for the reasons expressed in this opinion.

Defendant and plaintiff Michon Chambon were married for twenty years. When they divorced on August 7, 2009, their three children were ages nineteen, sixteen, and eleven. The judgment of divorce (JOD) incorporated a marital settlement agreement (MSA) executed a month earlier. The MSA contained the following provisions relevant to this appeal:

> 14. [Plaintiff] may remain in the former marital home for a period of two years from the date of this [a]greement. For a period of one year from the date of this [a]greement, while [plaintiff] lives in the home, [defendant] shall pay the mortgage, utilities, real estate taxes, gas, electric, telephone, and all maintenance and repairs. Thereafter, for a period of one year, while [plaintiff] continues to live in the former marital home, [defendant] will be responsible for all shelter expenses with the exception of [fifty percent] of the utilities, internet, television and telephone bills, which shall be [plaintiff's] responsibility; however, [defendant] will advance [plaintiff's fifty percent] share of these expenses, which shall be credited back to [defendant] from his final [l]ump [s]um payments, as set forth below. Further, for the two-year period from the date of this [a]greement, [defendant] shall continue to give [plaintiff] the use of the company car she presently drives. [Defendant] shall be responsible for all

payments on the car, the car insurance, all repair and maintenance expenses. . . .

15. Except as specifically set forth in this [a]greement, neither party will pay alimony or other form of spousal support to, or on behalf of, the other. Specifically, [plaintiff] waives alimony or other spousal support from [defendant]. The consideration for this waiver is a portion of the lump sum payment [defendant] will make to [plaintiff], as well as [defendant's] agreement to pay health insurance premiums for [plaintiff] until she finds full-time employment, or two years, whichever occurs first, and his agreement that [plaintiff] can remain in the marital home for up to two years after the date of this [a]greement, with [defendant] paying the shelter expenses that are set forth below under the "Equitable Distribution" provisions of this [a]greement. . . .

. . . .

22. Personal Property. The parties are confident that they will be able to determine and arrange for the distribution of personal property, including furniture and furnishings, which they will do to their mutual satisfaction. If they are unable to agree, they will bring any remaining disputes to mediation prior to resorting to court action.

23. Cars. The parties' cars are owned by [defendant's] business. Nevertheless, [plaintiff] will continue to have the use of the Chrysler Aspen until she vacates the former marital home, or for two years, whichever occurs first, at which point [plaintiff] shall return the car to [defendant]. The parties will, at that time, obtain a Kelley Blue Book private party sale value, and [defendant] will pay one-half of that value to [plaintiff].

3

. . . .

25. Lump Sum Payment. [Defendant] will pay [plaintiff] lump sum payments [totaling] $600,000. . . . These payments shall not be taxable to [plaintiff], or deductible for [defendant]. These lump sum payments are in consideration of equitable distribution set forth, as well as [plaintiff's] waiver of any alimony or other form of spousal support. Payment of this [l]ump [s]um shall be as follows: $20,000 on the signing of this [a]greement; $300,000 when [plaintiff] vacates the marital home, and the balance of $280,000 shall be paid in annual installments of $56,000 for five years thereafter, each installment to be paid on the anniversary of the date [plaintiff] vacated the home. From the final installment, [defendant] shall deduct any monies due him for [plaintiff's fifty percent] of the utility, internet, television and phone expenses due him for the period when [plaintiff] continues to live in the former marital home.

. . . .

27. [Defendant] will maintain life insurance on his life, in trust, in the amount of $110,000 for the unemancipated children, with [plaintiff] as trustee. [Defendant], in addition to this insurance, will sign a promissory note and mortgage, which shall be recorded as a lien against the marital home, and, to the extent there is insufficient equity in the marital home for this purpose, he shall give [plaintiff] a lien against other properties he owns, in an amount sufficient to secure his lump sum payments due to [plaintiff] under the terms of this [a]greement. The note and mortgage shall be subordinate only to the primary mortgage that [defendant] will need to refinance the home to remove [plaintiff's] name from the existing mortgages.

A-0354-20

. . . .

> 37. Prior to bringing an issue to the [c]ourt, other than in emergencies, the parties must first make a good faith attempt to amicably resolve their dispute, including submitting to mediation. They must attempt to mediate any dispute that arises between them concerning this [a]greement and any other matter related to their divorce prior to seeking court action. This provision shall not serve as a waiver of any rights that either may have for remedies in [c]ourt, but serves rather as a good faith effort to avoid litigation and acrimony.

The MSA contained no college provision. However, the parties had custodial accounts for college, which are relevant to this appeal.

On February 25, 2020, plaintiff filed a motion to enforce litigant's rights, claiming defendant violated paragraphs twenty-two, twenty-three, twenty-five, twenty-seven, and thirty-seven of the MSA. She certified she moved out of the marital residence around November 4, 2011, but defendant had only paid her approximately $150,500 between May 7, 2011 and April 22, 2015. Plaintiff certified "[d]efendant may be entitled to some credit against this figure in accord with [p]aragraph [fourteen] of the [MSA], but he has . . . not provided this information." She sought a judgment for the lump sum amount due under paragraph twenty-five of $461,500 plus $233,990.55 in interest. The interest on the lump sum was calculated by a forensic economist, whose report was attached

to plaintiff's certification and stated: "We were . . . advised that in accordance with the New Jersey [p]ost [j]udgment [i]nterest calculations of outstanding payment, a rate of 7.5% should be used."

Plaintiff also sought a judgment of $11,410 for the distribution of furniture, comprised of $7,000 plus interest of $4,410 pursuant to paragraph twenty-two of the MSA. She certified defendant agreed to pay her the $7,000 in exchange for keeping the dining room furniture. She attached a valuation for the Chrysler showing a value of $16,311.82 and requested a judgment for $13,443.29, representing $8,155.91 for the vehicle and $5,287.38 in interest, pursuant to paragraph twenty-three of the MSA.[1]

Plaintiff's motion requested the court compel defendant to sign a promissory note and mortgage to be recorded as a lien against the marital home as required by paragraph twenty-seven of the MSA. She also requested the court compel him to identify properties he owned that could be used to satisfy his financial obligations under the MSA.

---

[1] The expert's report did not include a calculation for the interest on the furniture and car, and the record does not indicate how the calculations were made. However, the calculations are irrelevant because defendant contested these requests and the judgments rendered regarding them for different reasons.

6

Plaintiff certified that beginning in October 2018, she sent defendant multiple communications requesting the parties mediate their dispute as required by the MSA, and attached an October 22, 2018 email requesting mediation. Additionally, on January 8, 2020, her attorney sent defendant a letter via regular and certified mail seeking mediation; the regular mail was not returned and the certified mailing was returned unclaimed.

Defendant never responded to the motion and the motion judge entered the March 27 order finding him in violation of litigant's rights, and granted plaintiff the judgments sought for the furniture, automobile, and the lump sum payment. The judge also granted plaintiff's request for the promissory note, and mortgage, and other relief not relevant to this appeal.

The judge found as follows: "Defendant has not replied to the present motion and has not provided any legitimate excuse for his non-compliance with the parties' MSA. Eleven years have passed since the entry of the parties' JOD."

On June 9, 2020, defendant filed a motion for reconsideration of the March order and asked the court to order the parties to mediation. Regarding his failure to oppose the enforcement motion, defendant certified as follows:

> I know the papers show that I was served with the motion at work, but I did not receive them there. I have laid off so many people due to the [c]oronavirus and they are not too happy about it.

7

> The motion papers apparently came to my house as well and the kids put . . . them to the side.

Defendant certified plaintiff owed him half the utilities, electric, water, sewer, cable, and phone expenses incurred while she lived in the marital home pursuant to paragraphs fourteen and twenty-five of the MSA. His certification did not include the total sum of money owed; he claimed he was gathering the records and would present them to the court. Defendant argued it was unfair to compel him to pay plaintiff for the car because he paid it off and continued to insure it while plaintiff used it, and plaintiff had gifted the vehicle to their daughter. He argued he could give the car to plaintiff rather than pay her for it. Defendant stated he let plaintiff take all the furniture she wanted and should not have to pay her for the items she did not want to take. He claimed he tried to refinance his residence to pay plaintiff, but the judgments entered in the March order prevented him from doing so.

Defendant also claimed plaintiff withdrew money from the children's college accounts, which required him to pay for the children's college without contribution from plaintiff. He also alleged he supported the children while they lived with him and paid their car insurance, medical insurance, and education

8

needs. He stated: "We always knew that I owed [plaintiff] money but I was paying everything so we would deduct it."

Plaintiff opposed defendant's motion and denied any agreement to offset the lump sum payment with any college or child related expenses. She admitted withdrawing funds from their eldest son's account, but claimed it was at the son's request and she gave him the funds. She denied receiving any furniture.

At oral argument, defendant's counsel asserted defendant did not contest plaintiff's enforcement motion because he believed the courts were closed due to the COVID-19 pandemic, which counsel acknowledged "was completely wrong and mistaken." Counsel argued that the parties should attend mediation, but plaintiff's attorney rejected it arguing it would be "a waste of time." Plaintiff's counsel argued defendant did not articulate a reason to reconsider the March order under Rule 4:49-2 or provide exceptional circumstances for relief under [Rule 4:50-1]. The judge agreed and stated: "I do not find that any of the Rule 4:50-1 grounds apply here. It's simply enforcement of a judgment . . . [and] the arguments that were made for . . . why it would be unfair were already raised . . . ."

The judge issued the July 17 order denying the motion. In written findings, he stated: "There was no reason for defendant to believe that a

 A-0354-20

judgment would not be entered against him because of the coronavirus pandemic. COVID-19 was not an excuse to ignore plaintiff's filings." The judge found defendant was not entitled to reconsideration because he "waited over seventy days and until a judgment had been filed against him to file a motion for reconsideration . . . [and had] not provided any legitimate excuse for his failure to respond to the motion." The judge rejected defendant's request for credits against the judgment because he submitted "absolutely no documentation to support his claim . . . ." The judge also concluded mediation would not "be productive[] and would likely be a waste of the parties' time and money."[2]

In August 2020, defendant filed another motion challenging the March and July orders pursuant to Rules 4:49-2 and 4:50-1. He attached a statement from the son's college account, which listed plaintiff as the custodian, showing a withdrawal of $41,785.50 in December 2015. Defendant sought a credit for these funds. Defendant's certification also sought credits for other expenses he claimed he paid for the children.

Defendant's certification claimed he paid over $224,000 between September 2009 and August 2015 toward his lump sum obligation under the

---

[2] The judge was referencing the fact plaintiff's counsel rejected the offer of mediation during oral argument.

MSA. However, the certification attached no objective evidence to support the sum and was largely comprised of a self-created spreadsheet. His certification also attached a printout from PSE&G for March 2009 through January 2013, showing electricity payments totaling $62,336.60. He argued he should receive a credit for $30,000[3] pursuant to the MSA's terms and the other sums he claimed were paid to plaintiff and for the children's expenses.

Following oral argument, the motion judge entered the September 11, 2020 order granting defendant a credit for one-half the amount withdrawn from the son's account against the interest owed on the lump sum payment. In the judge's written findings, he reasoned plaintiff owed half the funds because the account belonged to the parties, the funds were intended to pay college expenses, and plaintiff admitted she withdrew the funds. The judge further found "[d]efendant has not shown that [p]laintiff has received a windfall or took the money to offset the amount that defendant owed to her. Plaintiff . . . did not personally benefit from the withdrawal, and instead withdrew the funds pursuant to an agreement between herself and the parties' adult son."

---

[3] Defendant did not explain how he derived this figure. Regardless, the exhibit from PSE&G showed a total of $62,367.36, which appeared to be the tally of all payments ever made on the account because the actual total of payments made during the March 2009 and January 2013 period was $23,417.03.

11

The judge denied the reconsideration motion reiterating defendant was out of time to challenge the March order and did not establish grounds for relief under the legal standard for reconsideration. He denied the request for remaining credits and alleged additional payments, noting the evidence was insufficient for him to render a decision. On September 14, 2020, the judge entered an amended order reflecting the credit for the funds withdrawn from the son's college account and concluded defendant owed plaintiff interest on the judgment in the amount of $213,037.80.

Defendant raises the following points on appeal:

> I.   DEFENDANT DID NOT HAVE PROPER NOTICE OR ADEQUATE OPPORTUNITY TO RESPOND TO THE MOTION RESULTING IN THE MARCH 27, 2020 ORDER.
>
> II.   THE DEADLINE FOR DEFENDANT TO FILE A MOTION FOR RECONSIDERATION OF THE MARCH 27, 2020 ORDER SHOULD HAVE BEEN TOLLED BY THE SUPREME COURT OMNIBUS ORDERS OR ALTERNATIVELY, THE MARCH 27, 2020 ORDER SHOULD BE SET ASIDE PURSUANT TO [RULE] 4:50-1 AND [RULE] 4:49-2.
>
> > A.   Interpretation of Supreme Court Omnibus Order and Filing Deadline Extensions.
> >
> > B.   Standard of Review of Enforcement Orders.

C. The [T]rial Court erred in denying Defendant's Motion to Reconsider under <u>Rule</u> 4:49-2.

D. The Trial Court erred in denying Defendant's Motion to Vacate under <u>Rule</u> 4:50-1.

III. THE TRIAL COURT SHOULD HAVE SCHEDULED A PLENARY HEARING TO DETERMINE QUESTIONS OF CREDIBILITY IN CONJUNCTION WITH THE PARTIES' MSA.

IV. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FAILING TO ABIDE UNAMBIGUOUS TERMS WITHIN THE PARTIES' MSA.

V. POST-JUDGMENT INTEREST SHOULD NOT HAVE BEEN APPLIED AGAINST EQUITABLE DISTRIBUTION PAYMENTS BUT IN THE ALTERNATIVE, THE LEVEL OF INTEREST SET BY THE COURT WAS INEQUITABLE AND CONTRARY TO [RULE] 4:42-11.

VI. THE TRIAL COURT ERRED IN REFUSING TO ENFORCE THE MEDIATION PROVISION OF THE PARTIES' MSA.

A. The Trial Court should have held a Plenary Hearing to Determine Genuine Issues of Material Fact as to Payments and Credits.

I.

A motion for reconsideration is "primarily an opportunity to seek to convince the court that either 1) it has expressed its decision based upon a

palpably incorrect or irrational basis, or 2) it is obvious that the court either did not consider, or failed to appreciate the significance of probative, competent evidence." Kornbleuth v. Westover, 241 N.J. 289, 301 (2020) (quoting Guido v. Duane Morris LLP, 202 N.J. 79, 87-88 (2010)). "Reconsideration cannot be used to expand the record and reargue a motion" and does not "serve as a vehicle to introduce new evidence in order to cure an inadequacy in the motion record." Cap. Fin. Co. of Del. Valley, Inc. v. Asterbadi, 398 N.J. Super. 299, 310 (App. Div. 2008).

We review the denial of a motion for reconsideration for an abuse of discretion. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021). "An abuse of discretion arises when a decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015) (internal quotation marks omitted) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)).

Rule 4:50-1 states:

> [T]he court may relieve a party . . . from a[n] . . . order [if] . . . (c) [there is] . . . misconduct of an adverse party; . . . (e) . . . it is no longer equitable that the . . . order should have prospective application; or (f) any other reason justifying relief from the operation of the . . . order.

14

"Courts should use Rule 4:50-1 sparingly, in exceptional situations[.]" Hous. Auth. of Morristown v. Little, 135 N.J. 274, 289 (1994). "[T]o establish the right to such relief, it must be shown that enforcement of the order or judgment would be unjust, oppressive or inequitable." Harrington v. Harrington, 281 N.J. Super. 39, 48 (App. Div. 1995). We review a trial court's Rule 4:50-1 determination for an abuse of discretion. Deutsche Bank Tr. Co. Ams. v. Angeles, 428 N.J. Super. 315, 318-19 (App. Div. 2012).

"We review the Family Part judge's findings in accordance with a deferential standard of review, recognizing the court's 'special jurisdiction and expertise in family matters.'" Thieme v. Aucoin-Thieme, 227 N.J. 269, 282-83 (2016) (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)). We interfere "[o]nly when the trial court's conclusions are so 'clearly mistaken' or 'wide of the mark' . . . to ensure that there is not a denial of justice." N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 104 (2008) (quoting N.J. Div. of Youth & Fam. Servs. v. G.L., 191 N.J. 596, 605 (2007)). However, we owe "no deference to the judge's decision on an issue of law or the legal consequences that flow from established facts." Dever v. Howell, 456 N.J. Super. 300, 309 (App. Div. 2018) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

## II.

At the outset, we decline to consider defendant's arguments challenging the March order on service of process and procedural grounds. Defendant's initial motion for reconsideration was filed on June 9, 2020, well after the twenty-day time limit set forth in Rule 4:49-2. As a result, the March order became final on April 16, 2020, and defendant did not timely appeal. See R. 2:4-1. We affirm the decision not to revisit the March order because it is final and for the reasons expressed by the motion judge.

## III.

Defendant argues the judge abused his discretion when he denied reconsideration of the July order and denied relief from the July and September orders under Rule 4:50-1. He argues the court should have granted his Rule 4:50-1(c) and (e) motion because plaintiff's withdrawal of funds from the college account constituted misconduct, which no longer made the March order equitable. He contends he was entitled to relief under Rule 4:50-1(f) because he paid for all the children's expenses without plaintiff's contribution, and plaintiff delayed in filing her enforcement motion. He argues the judge should have: 1) granted him a credit for automobile, medical and college-related expenses paid on behalf of plaintiff and the children; 2) denied plaintiff a credit

16

for the furniture because the MSA contemplated the parties would divide their personal property; 3) denied plaintiff a credit for the Chrysler Aspen because he replaced the vehicle with a Chrysler 300 for plaintiff to drive; and 4) granted him a credit for the utilities paid for the marital residence as required by the MSA.

Having considered these arguments pursuant to the record and our standard of review, we affirm substantially for the reasons expressed by the motion judge. We add the following comments.

Defendant's arguments the judge erred by not granting him relief because of the withdrawals from the college account are unpersuasive because the September orders granted defendant a credit for one-half of the funds taken. The judge found the accounts belonged to the parties for the benefit of the children and compensated defendant for his share of the funds. Plaintiff's conduct did not obviate the finding defendant violated litigant's rights in failing to pay plaintiff the sums due under the MSA and did not warrant relief from the March order under any subpart of Rule 4:50-1.

The judge did not err when he declined to consider credits for the automobile, medical, and college-related expenses defendant said he paid because they were not bargained for in the MSA. The money awarded to

plaintiff for her share of the vehicle was consistent with the MSA requiring defendant to pay plaintiff one-half of the Aspen's value as equitable distribution and was based on an unopposed and objective estimate of the vehicle's value. The MSA permitted the parties to resort to the court if they could not resolve the division of their furniture and did not foreclose a money judgment as a means of resolving the issue.

Although defendant was entitled to a credit for the utilities, he failed to provide the court with the evidence when plaintiff filed her initial motion to enforce litigant's rights. When defendant filed his first motion for reconsideration and relief from the March order, he still failed to provide the necessary evidence. He provided the PSE&G evidence on the third attempt, and even with the evidence the amount sought was indiscernible because defendant sought a credit for March 2009 to January 2013, yet plaintiff moved out of the marital residence in November 2011.

Under Rule 4:49-2, a court "focuses upon what was before the court in the first instance." Lahue v. Pio Costa, 263 N.J. Super. 575, 598 (App. Div. 1983). Reconsideration is properly denied if a litigant asserts "facts known to him [or her] prior to the entry of the order . . . ." Palombi v. Palombi, 414 N.J. Super. 274, 289 (App. Div. 2010). Defendant knew he was entitled to credits for

A-0354-20

utilities and did not give the court the proofs when it heard plaintiff's motion to enforce litigant's rights. Furthermore, defendant's failure to provide the court with the PSE&G bill until months after the fact did not constitute the sort of exceptional circumstances warranting relief from the March and July orders under Rule 4:50-1.

IV.

Defendant argues the 7.5% interest rate used by plaintiff's expert to calculate the judgment for the outstanding lump sum payments is excessive and constitutes exceptional circumstances warranting relief from the March order. He asserts the judge contravened Rule 4:42-11(a), which governs post-judgment interest rates.

The decision to award interest is within the court's discretion. Clarke v. Clarke ex rel. Costine, 359 N.J. Super. 562, 571 (App. Div. 2003). However, with regards to the interest rate itself, absent an agreement between the parties, post-judgment interest is governed by Rule 4:42-11(a). Rule 4:42-11(a)(ii) and (iii) state

> interest shall equal the average rate of return, to the nearest whole or one-half percent, for the corresponding preceding fiscal year terminating on June 30, of the State of New Jersey Cash Management Fund (State accounts) as reported by the Division of Investment in the Department of the Treasury, but the

rate shall be not less than 0.25% . . . plus 2% per annum.
[For current rates see Publisher's Note Below]

The comment to Rule 4:42-11(a) states that "[i]nterest for each period covered by a different rate must be separately calculated in order to arrive at total post[-]judgment interest." Pressler & Verniero, Current N.J. Court Rules, cmt. 1.1 on R. 4:42-11 (2022). See also Waldron v. Johnson, 368 N.J. Super. 348, 355 (App. Div. 2004) ("[Rule] 4:42-11, itself, requires that for each year of accrual, the rate of interest must be ascertained by reference to the average rate of return for the preceding year . . . .") (emphasis added); Brinkley v. W. World Inc., 292 N.J. Super. 134, 137-38 (App. Div. 1996) ("we conclude that the [post-judgment] interest should be calculated for each year in accordance with the applicable interest rate for each year as established by [Rule] 4:42-11(a).").

As we noted, the MSA was incorporated into the parties' JOD, which became final on August 7, 2009. According to plaintiff, the 7.5% figure was derived by taking the 5.5% interest rate for 2008 and adding the additional 2% per annum pursuant to Rule 4:42-11(a)(iii). The expert then used this fixed rate to calculate the interest due on various payments owed to plaintiff from 2009 to 2016, resulting in a total interest amount of $233,990.55.

However, the MSA required defendant to pay plaintiff over a course of several years following entry of the JOD in 2009. According to the publisher's

note in <u>Rule</u> 4:42-11, the interest rates varied each year since the JOD and were less than the 7.5% used by plaintiff's expert.  Therefore, the use of a flat interest figure was incorrect, and the judge misapplied the law.  For these reasons, we are constrained to remand the interest computation for recalculation in accordance with <u>Rule</u> 4:42-11(a)(ii) and (iii) and entry of an amended judgment in plaintiff's favor.

## V.

Defendant's remaining arguments on appeal lack sufficient merit to warrant discussion in a written opinion.  <u>See</u> <u>R.</u> 2:11-3(e)(1)(E).

Affirmed in part and remanded in part.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

21